CHARLES BURKHALTER v. JANE JONES.

32   5
41   37
32   5
45   433

1. MISTAKE OF FACT; *Contract, When Not Enforced.* While in legal contemplation two persons may make a contract that would be enforced at law, yet if it should seem probable from the facts of the case that the parties did not in fact and in equity agree to the same thing, the supposed contract would not be decreed in equity to be enforced especially.

2. SPECIFIC PERFORMANCE, *Not Decreed.* Therefore where the facts are such that in law it would be held that a contract of purchase and sale of a piece of land was made for the sum of $2,000, but in all probability the vendor at the time did not believe that he was making a contract to sell the land for that sum, but believed he was making a contract to sell the land for the sum of $2,100, a specific performance of the contract will not be decreed in equity against the vendor on the tender by the vendee of $2,000.

*Error from Doniphan District Court.*

ACTION brought by *Charles Burkhalter* against *Jane Jones*, for the purpose of having an alleged contract corrected and reformed and specifically enforced. The case was submitted to the court, without a jury, and the court made the following findings, to wit:

### CONCLUSIONS OF FACT.

"1. On August 2, 1883, N. N. Jones (the husband of the defendant,) died, at Normal, Illinois, seized and possessed of E. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ and S. E. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, sec. 19, township 3, range 21, in this county, being 60 acres, which land had been conveyed to him more than ten years before, by Cyrus Leland, senior.

" 2. The plaintiff, a resident of Troy, had been corresponding with said N. N. Jones a short time before his death.

"On August 10, 1883, the defendant caused to be written and sent to the plaintiff here a postal card, as follows:

'NORMAL, Aug. 10th, 1883.
'DEAR SIR: Received a letter from you the other day. Mr. N. N. Jones died the other day, Aug. 2d. Mrs. N. N. Jones owns all this property. She needs money now and will take $40 per acre cash if you can possibly take it on that terms. If not, how much can you pay down? On what terms can you take it? Answer in return mail, and oblige
'MRS. N. N. JONES.'
(Directed) 'Mr. Charles Burkhalter, Troy, Kansas.'

"Said postal card was received by the plaintiff about August 15th.

"3. About August 16th, the plaintiff answered said postal card as follows:

'TROY, KANSAS, August, 1883.
'MRS. N. N. JONES, *Normal, Ill.—Dear Madam:* Yours of 9th received. As regards the land that I have been corresponding with your late husband about, I made him an offer some time ago of $40 per acre. When I made that offer there was another party would have taken the south part of it at that price, and I was willing to pay that amount for the north part, but taking the whole of it together I think $35 is a big price for it. To buy the land now and pay cash down, and not get possession until next spring, and have the taxes to pay on it this fall, I would not want to pay over two thousand dollars for the sixty acres. And counting taxes and interest on the money, that would make it a little over $35 per acre. The other party will not stand in with me now. The land is rather in bad condition; it has been badly washed. If that will buy the land, I will take it and pay all the money down.
'Yours respectfully, C. BURKHALTER.
'P. S.—If that will buy the land, please let me hear from you soon. I have another trade in view here, which would conflict with this.
C. B.'

"Said letter was received by the defendant in due course of the mail.

"4. In reply to said last-mentioned letter the defendant caused to be written by postal card as follows:

'NORMAL, Aug. 21.

'DEAR SIR: We will accept your offer. Will have to know what sixty it is. Is it the land Leland owned before father bought it, and is it all together? You send check to First National Bank, and we will make out deed and everything necessary for transfer, and we will deliver papers at bank for you. Drop a card in regard to number of land.

'MRS. JANE JONES.'

(Directed) 'Charles Burkhalter, Troy, Kansas.'

"Said postal card was received by plaintiff here, August 22d or 23d, 1883.

"5. In response to said last-mentioned postal card, the plaintiff wrote as follows:

'TROY, KANSAS, Aug. 23, 1883.

'MRS. N. N. JONES, *Normal, Ill.—Dear Madam:* Yours of the 21st received this morning, and inclosed please find description of land. I think the better way would be for you to make out deed and send by express, C. O. D., as I will want to have deed examined to know that title is all right before paying money. You perhaps best have an attorney to make out deed for you, as he will be more apt to know what is necessary under the circumstances.    Yours respectfully,

'CHARLES BURKHALTER.'

"Inclosed in said letter was a diagram of the quarter-section of land, showing the part described in conclusion of fact No. 1, as owned by N. N. Jones, and also purporting to show the parts of said quarter-section owned by others; and there was a written description of the land in controversy, except that it was stated 'to be in range 20, instead of range 21. Said letter and inclosure were received by the defendant in due course of the mail.

"6. On August 25, 1883, the defendant executed a deed, naming the plaintiff as grantee, and describing the land in accordance with said inclosure and as being in range 20, instead of range 21. The consideration named in the deed was $2,100. She delivered said deed to the First National Bank of Bloomington, Illinois, together with a copy of the letters testamentary of the estate of N. N. Jones, with instructions to deliver them to the plaintiff through Border Brothers, bankers at Troy, Kansas, on payment of $2,100 and charges, and said bank of Bloomington transmitted said papers to Border Brothers with said instructions, and further instructed them to deliver the papers to the plaintiff only on payment of $2,100, and the charges of Border Brothers, but to allow plaintiff to examine them. On Monday, September

27, 1883, said papers were received by Border Brothers, and the plaintiff was informed of the fact of their arrival.

"7. On the next morning, the plaintiff called at the bank of Border Brothers and examined the deed, and Border Brothers informed him of their instructions. The plaintiff told them that there was a mistake in the consideration of the deed; that he was to have the property for $2,000. He requested them to retain the deed until he could write to the defendant, but that if she would not take the $2,000 for it he would pay $2,100. He did not make any tender of money to Border Brothers, but he had made arrangements with them to borrow said sum of $2,000 from them so that he might pay for the land on delivery of the deed. On the same day he wrote to the defendant as follows:

'TROY, KANSAS, Aug. 28, 1883.

'MRS. JANE JONES, *Normal, Ill.—Dear Madam:* Your deed and papers were shown me this morning by Mr. Border, banker; papers and deed all right, with the exception of the amount to be paid for land. I think you will find by my letter in which I made you offer, that I stated that I would not pay over $2,000 for the sixty acres; that, counting taxes this fall and interest on money, would be equivalent to $35 per acre, or words to that effect; that is, by the time I could get possession the first of next March. Hoping that when you come to re-reading my letter you will see that I am correct in what I claim, you will have your bankers rectify the mistake, and oblige                    Yours respectfully,

'CHAS. BURKHALTER.

'P. S.—Please write me as soon as convenient, and oblige.        C. B.

'The offer was really 33⅓ dollars per acre, but you will see on figuring the interest on two thousand from Sept. 1st to March 1st, 1884, together with about $40 taxes this fall, that I will be paying a little over $35 per acre.                                            C. B.'

"Said letter was received by the defendant in due course of the mail, probably the next day.

"8. Sometime between August 25 and August 31, 1883, Cyrus Leland carried on a telegraphic correspondence from Troy with the defendant, negotiating for the purchase of said land.

"A telegram in the name of J. B. Byers was, with the consent of said Byers, also sent by some other person, with a view to the purchase of said land. On August 31, 1883, said Cyrus Leland presented to Border Bros. a letter from the defendant, requesting them to return the deed and papers, and afterward, on the same day, Border Brothers returned said deed and papers to said bank at Bloomington.

"Afterward, on the same day, the plaintiff learned that said deed and papers had been returned at defendant's request, and he immediately thereafter commenced this action on the same day. At some time before the return of the deed the plaintiff

told Border Brothers that he would take the loan of $2,000 anyhow, but they then declined to make the loan, stating as a reason that they did not want to get into any trouble on account of the land.

"9. On September 1, 1883, said bank at Bloomington and the defendant received said deed and papers, and on the same day the defendant executed to said Cyrus Leland, jr., a deed for the land in controversy for the sum of $2,400, and said deed was received by the grantee a day or two afterward, and the same was duly recorded September 8, 1883.

"10. On September 2, 1883, the defendant responded to the plaintiff's letter of August 28, 1883, as follows:

'NORMAL, ILL., Sept. 2.

'DEAR SIR: I think your letter needs no answer, but will say I never would give away land. I was not so hard up. I told you plainly I would not take less than $35 per acre. That was need of money; then you said you would take it, but you did not. So I ordered papers sent back, and I sold it yesterday to Mr. C. Leland, jr., for $40 per a. Sorry you misunderstood my intentions, but can't be helped now. Respectfully,

'JANE M. JONES.'

"Said letter was received by the plaintiff in due course of the mail.

"11. On September 2, 1883, the defendant wrote to J. B. Byers in response to the telegram sent in his name, as follows:

'NORMAL, Sept. 2, 1883.

'DEAR SIR: You were too late. I have sold land to other parties for $40; I got a telegram last Tuesday, and deed has been sent. Much obliged to you for trying to sell land for me. I sold the land $10 per acre too cheap. Mr. Burkhalter misunderstood my letter, and he put me to a heap of costs and trouble. Mr. C. Leland got the land. Respectfully,

'JANE M. JONES.'

"Said letter was duly received by the said J. B. Byers in due course of the mail.

"12. The foregoing is all the correspondence relating to the sale of the land to the plaintiff, and there was no personal interview and no negotiations except by said correspondence. The defendant's son wrote her letters for her.

"13. Neither the defendant nor her late husband had or claimed any title to or interest in N. E. ¼ sec. 19, T. 2, R. 20, and in said negotiations both the plaintiff and the defendant had in contemplation the land now in controversy.

"14. It does not appear, unless from said correspondence, whether the defendant could have given immediate possession of the land on the delivery of the deed, or at any time before spring or March 1, 1884, or not, nor what her understanding or intention was in that respect.

"15. On the trial of this case the plaintiff brought into

court the sum of $2,000 in gold coin of the United States, and tendered the same to the defendant in open court, but the defendant by her attorney refused to accept the same; and thereupon the plaintiff offered in open court to deposit the same with the clerk of this court if ordered or deemed necessary by the court, but it being deemed by the court unnecessary, the money was not deposited."

### CONCLUSIONS OF LAW.

"1. It does not so clearly appear from the evidence that the defendant fully understood that she was to receive only $2,000 for the land as to entitle the plaintiff to a specific performance.

"2. This action ought to be dismissed without prejudice to the right of the plaintiff to proceed in an action at law for damages, if by him deemed advisable.

"3. Each party ought to pay his and her own costs, respectively."

Judgment accordingly for the defendant, at the December Term, 1883. The plaintiff brings the case here.

*Albert Perry,* for plaintiff in error.

*Peck, Johnson & McFarland,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Charles Burkhalter against Jane Jones, in the district court of Doniphan county, for the purpose of having an alleged contract corrected, reformed, and specifically enforced. The case was submitted to the court without a jury, and the court made special findings of fact and law, and upon such findings rendered judgment in favor of the defendant and against the plaintiff, dismissing the plaintiff's action without prejudice. Of this judgment the plaintiff now complains.

The plaintiff resided at Troy, Kansas, and the defendant resided at Normal, Illinois, and the supposed contract was made solely by correspondence. This correspondence and the supposed contract made thereby, were with reference to the purchase by the plaintiff of the defendant of sixty acres of land owned by the defendant in Doniphan county, Kansas.

This correspondence was simply a continuation of a previous correspondence of the same character, which had been carried on between the plaintiff and the defendant's husband previous to his death, which occurred on August 2, 1883. The first letter received by the defendant from the plaintiff was written about August 16, 1883. This contained a proposition to purchase the land from the defendant. The land at that time was worth about $2,400, which was at the rate of $40 per acre. This letter of the plaintiff was clumsily written, but it stated in substance that he had formerly offered the defendant's husband $40 per acre for the land, but that he then thought that $35 per acre would be "a big price for it." He then stated in the letter as follows: "To buy the land now and pay cash down, and not get possession until next spring, and have the taxes to pay on it this fall, I would not want to pay over $2,000 for the sixty acres. And counting taxes and interest on the money, that would make it a little over $35 per acre. . . . If that will buy the land, I will take it and pay all the money down." On August 21, 1883, the defendant wrote to the plaintiff, saying: "We will accept your offer," and asking the plaintiff to send her the description of the land, which he immediately did, except that he stated that the land is in range 20, when in fact it is in range 21. On August 25, 1883, she executed a deed to the plaintiff for the land, except that she made the same mistake with regard to the description of the land that the plaintiff did, and she stated the consideration to be $2,100, which is at the rate of $35 per acre. She sent this deed to a banker at Troy, Kansas, and instructed the banker to deliver it to the plaintiff upon the receipt of $2,100. The plaintiff however objected to paying the $2,100, and did not pay the same, and the banker did not deliver to him the deed. Afterward the plaintiff ordered the deed to be returned to her, which was done, and she then sold the land to another person for $2,400, being at the rate of $40 per acre.

The plaintiff by his letter offered to purchase the land and pay $2,000 therefor; but the defendant would seem to have

understood that the offer was to pay $35 per acre, which would make the amount to be paid for the land $2,100. We think upon the facts of the case that in legal contemplation the plaintiff and defendant entered into a contract for the purchase and sale of the land for $2,000; but in equity it can hardly be said that any contract was made between the parties; for in all probability the parties never in fact agreed to the same thing. He offered to pay $2,000 for the land, while she in all probability intended to agree to take $2,100, and nothing less. He offered to pay $2,000, and get possession in the spring of 1884; but when in the spring of 1884? In March, April, or May, and what day of March, April, or May? Possibly she intended to take $2,100 and give possession immediately. In all probability she did not understand the plaintiff's letter as he did. And it must be remembered that she is a woman, and a woman who had been recently left a widow, and who was presumably unaccustomed to the transaction of business. Even her letters to the plaintiff were not written by herself; therefore it is not very strange that she should misunderstand the scope and meaning of the plaintiff's letter and the exact character of his offer. In his letter he spoke of $35 per acre, and then of $2,000 for the sixty acres, and again of $35 per acre, and then says: "If that will buy the land, I will take it and pay all the money down." The word "that" we would think referred to the $2,000; but the defendant in all probability believed that it referred to the $35 per acre. It will be perceived that the plaintiff at no time and in no part of his letter made any direct, explicit, or exact offer to pay $2,000 for the land, but simply used the language, "I would not want to pay over $2,000 for the sixty acres" and not get possession, etc. He also mentioned the sum of $35 per acre. The court below refused to order or decree that the alleged contract should be specifically enforced, and we do not feel like reversing that decision. The court below did not grant the defendant any affirmative relief, but simply dismissed the plaintiff's action without prejudice, for the purpose that he might commence an action at law for damages if he should choose to do so. Now

a stronger case for the specific performance of a contract should be made before a court should order or decree the specific performance of the contract, than need to be made to authorize the dismissal of the plaintiff's action; for if the court decrees the specific performance of the contract, the defendant has no remedy; but if the court dismisses the plaintiff's action without prejudice, as in this case, the plaintiff may commence another action. It must also be remembered that the plaintiff has as yet paid nothing for the land, nor has he obtained the possession thereof. Indeed, he has lost nothing, or at least the only thing which he has lost is the benefit of what he considers to be a very advantageous contract. The only tender of performance which he has ever made or offered to make was the offer to pay $2,000, first to the defendant and afterward into court.

Upon the evidence and the findings of the court below we think this is a close case, and really have doubts as to whether a specific enforcement of the alleged contract should be allowed, or not. In strict law, and by the words of the letters of the parties, we think the parties made a contract; but we also think that in fact and in equity, the minds of the parties never came together; that they really never agreed to the same thing; and therefore, in equity and good conscience, they did not make a contract, or at least they did not make such a contract as equity should adjudge to be specifically enforced.

The judgment of the court below will be affirmed.

All the Justices concurring.