Bird v. Logan.

## LORENZO F. BIRD v. ISAAC LOGAN, *et al.*

1. HOMESTEAD; *Conveyance Without Joint Consent.* Where a husband and wife execute a bond for a conveyance of their homestead, and they are ignorant and illiterate and can have no knowledge of the contents of the bond except as they are informed by others, and they execute the bond at different times, and the wife executes the bond after the husband has executed the same, and without any consultation with him or knowledge of its contents or its nature or character, or of any of the transactions connected therewith, except as she is informed by a notary public, acting as the agent of the obligee, and she executes the bond under a misapprehension as to the consideration for it, and as to the amount of a lien held by the obligee upon the real estate to be conveyed, which lien he is to remove, and these misapprehensions are brought about and induced by the agent of the obligee; and the consideration for the real estate agreed to be conveyed is inadequate: *Held,* Assuming that the husband was properly informed concerning all these matters, that there was no sufficient "joint consent" on the part of the husband and wife to the alienation of their homestead, and no sufficient equitable grounds for the specific enforcement of their contract, as will authorize an action in equity on the part of the obligee against the obligors for the specific enforcement of the contract; and further *held,* that the action cannot be maintained, whether the husband was properly informed, or not.

2. CONTRACT; *Specific Performance—When Enforced, When Not.* A contract will be specifically enforced only where its specific enforcement is equitable; and generally, only where the plaintiff has in equity and good conscience a right to demand its specific enforcement; and generally, where a contract is itself inequitable, and where the defendant has been misled by the plaintiff or his agent into executing it, the contract will not be specifically enforced.

### *Error from Atchison District Court.*

IN this case the court below made the following findings and conclusions, to wit:

#### CONCLUSIONS OF FACT.

"1. On and prior to February 20, 1882, the defendants were, and ever since said time they have been, husband and wife, and occupying as their homestead lot 12, block 23, North Atchison, consisting of less than one acre in the incorporated city of Atchison, in Atchison county, Kansas, the legal title of which homestead was and is in said Isaac Logan.

"2. On February 20, 1882, said defendants executed and delivered to the plaintiff a mortgage on said real estate to secure the payment of the sum of $176, with interest at 12 per cent. per annum from said date, of which $100 thereof was for purchase-money of said real estate and lumber for improvements thereon.

"3. On November 28, 1882, the plaintiff and said Isaac Logan agreed upon a sale of said premises to the plaintiff for the sum of $350, from which the mortgage indebtedness was to be deducted. The plaintiff then drew up the bond for a deed, a copy of which is annexed to the petition herein; and both of the defendants being illiterate and unable to write their names, the plaintiff wrote their names at the bottom of said instrument and also the words 'His mark' and 'Her mark,' and also made the two marks by cross. Said Isaac Logan then touched the pen to his mark, and the plaintiff paid him the sum of $30, and told him that there would be just $100 remaining to be paid, and that he would pay that sum when the deed was executed by both of the defendants. Said Anna Logan was not present at any of said negotiations, and she had no knowledge of them on that day nor of the payment of said sum of $30.

"4. On November 29, 1882, at the request of the plaintiff and Isaac Logan, J. P. Adams, a notary public, went to the house of the defendant to obtain the signature and acknowledgment of said Anna Logan to said instrument, he having previously taken the acknowledgment of said Isaac Logan thereto. Said Isaac Logan was not at home, but his wife was found there alone. Said Isaac Logan had not told her about the negotiations and transactions with the plaintiff, but she knew of the existence of said mortgage. She and her said husband had had some trouble, and they were not on good terms, although they continued to live together. She at first refused to sign the instrument, or to have anything to do with it, and said that it was the distinct understanding between herself and her husband when she signed the mortgage, that it was the last instrument she would ever sign relating to the property. Said J. P. Adams told her that she had a right to sign it, or not, as she chose; that the plaintiff's claim upon the property was $250, and that said Isaac Logan might be able to pay it off, in which case it could not be sold. From the statement in the instrument and some knowledge that said J. P. Adams had about said mortgage, he supposed that the plaintiff's claim upon the property was $250, when in fact it

was only $192.31, including interest to the date of said instrument; and said Anna Logan believed the representations made by said J. P. Adams. At length she concluded that said Isaac Logan would fail to pay the $250, and that the mortgage would be foreclosed, and she then proposed that if she could have the remaining $100 paid to her she would sign the instrument, and said J. P. Adams told her that he would see the plaintiff about it, and that he supposed it could be so arranged that she would get the $100. She then touched the pen to said mark, and said J. P. Adams left; and he made out the certificate of acknowledgment, a copy of which is appended to the copy of said intrument annexed to the petition herein. She knew nothing about the terms of the contract between the plaintiff and said Isaac Logan, nor of the real amount of the indebtedness, except as she was then told by said J. P. Adams. Said J. P. Adams stated to the plaintiff that said Anna Logan had signed the instrument and agreed to make the deed, only on condition that the $100 should be paid to her, and the plaintiff said that would be all right. On said 29th day of November, 1882, after the return of said acknowledged instrument to the plaintiff, he duly entered satisfaction of said mortgage upon the record thereof.

"5. On or about January 1, 1883, the plaintiff made a tender of $100, lawful money of the United States, to said Isaac Logan, and demanded a deed for said real estate, but said Isaac Logan refused to accept the money, and refused to make a deed, on the ground that his wife would not join in it. On the next day the plaintiff sent for said Anna Logan, and she went to his office, and he then and there tendered her the sum of $100, lawful money of the United States, and demanded a deed for said real estate; but said Anna Logan refused to accept the money, and refused to make a deed unless the plaintiff would pay her $200, which the plaintiff refused to do. On April 7, 1883, the plaintiff again tendered to both of the defendants, at different places, said sum of $100, lawful money of the United States, and also tendered to each of them, at different places, a blank deed, properly filled out, for said real estate, and requested the defendants to sign and execute the same; but the defendants each refused to accept said sum of money, and refused to sign and execute said deed for said real estate. Neither of said defendants has ever returned to the plaintiff said sum of $30, nor any part thereof, nor paid said mortgage debt, nor any part thereof.

"6. On November 28 and 29, 1882, real estate in that part

of the city of Atchison was of dull sale, but the market value of the real estate in controversy was $400 to $450, and its value at the present time, no additional improvements having been made, is about $700."

### CONCLUSIONS OF LAW.

"1. There was no such joint consent of husband and wife to the alienation of said homestead as should be enforced in equity.

"2. Said Anna Logan having been influenced to execute said instrument by a materially erroneous statement of the condition of the property by the officer who was the plaintiff's agent, the contract should not be specifically enforced against her.

"3. The facts stated do not entitle the plaintiff to specific performance.

"4. Each party ought to pay his and her own costs herein."

Judgment accordingly for defendants, at the June Term, 1884. The plaintiff brings the case here.

*Jackson & Royse,* for plaintiff in error.

*Smith & Solomon,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This action, as it was tried in the court below, was an action to compel the specific performance of an alleged contract for the sale and purchase of real estate. The case was tried before the court without a jury, and the court made special findings of fact and conclusions of law, and rendered judgment upon such findings and conclusions in favor of the defendants and against the plaintiff; and the plaintiff, as plaintiff in error, brings the case to this court for review.

The plaintiff challenges the correctness of both the findings of fact and the conclusions of law, but we are inclined to think that both are correct, and that the final judgment rendered thereon is also correct. It is admitted that the defendants were and are husband and wife, and that the property in controversy was and is their homestead; therefore any alienation of this property, or any contract for the alienation thereof, to be of any validity requires that the "joint consent" of both

the husband and wife should be given thereto; and this consent must not be brought about by any fraud, deception, or misstatement of material facts by the other party to the alienation, but must be the voluntary and intelligent consent of both the husband and wife.    Does the contract in the present case meet these requirements?    The defendants were ignorant, illiterate colored people, who did not know how to write even their own names, and could have no knowledge of the written contract sued on except as they were informed by other persons. On November 28, 1882, the plaintiff held a mortgage on the property in controversy, which mortgage, including principal and interest, amounted to $192.31.    He also paid one of the defendants, Isaac Logan, $30 in money, and agreed to pay him $100 more, making in all $322.31, and for this amount Logan executed the instrument in writing sued on, which was a bond and contract for the conveyance of the property in controversy to the plaintiff.    Whether Logan knew what the exact consideration for this instrument was, we shall not now stop to consider, but will pass on to the more important question—the one concerning the execution of the instrument by the other defendant, Anna Logan.    In this connection the questions arise: What was the real consideration for the instrument? and what was it represented to be to Mrs. Logan? The property at the time of the execution of the instrument was worth from $400 to $450.    It was worth about $700 at the time of the trial, which was July 22, 1884, without any improvements having been made thereon since the execution of the written instrument.    The plaintiff alleged in his petition in the court below that the consideration was $350.    The instrument itself showed that the consideration was $350.    J. P. Adams, a witness for the plaintiff, who was present and heard the parties make the contract, testified that he understood the consideration to be $350; and the court below found that such was the consideration.    In fact, however, the plaintiff has all the time treated the consideration as only $322.31, and has all the time claimed that $100 in addition to the mortgage of $192.31, including principal and interest, and the $30 paid by

the plaintiff to Logan, constituted the entire consideration and the entire purchase-money for the real estate in controversy. On November 29, 1882, the next day after the instrument had been executed by Logan, J. P. Adams, a notary public, went to the house of Logan and found Mrs. Logan alone, who had no knowledge of the transactions previously had between the plaintiff and Logan. He explained to her the nature and character of the instrument, told her the consideration therefor, and as the instrument itself showed that the consideration was $350, and as he believed that such was the consideration, he evidently told her that such was the consideration. She refused to sign the instrument. He further told her that there was still $100 to be paid on the contract — leaving it to be inferred, if he did not tell her so in express terms, that the claim of the plaintiff against Logan was $250. He also referred to the mortgage held by the plaintiff on the property, of which mortgage she of course had knowledge, although it is not probable that she knew what the exact amount of the mortgage was. In all probability he inadvertently led her to believe that the claim of the plaintiff against the land was $250, when in fact it was only $192.31, principal and interest; and the court below found from the evidence that all this occurred. It is even doubtful whether all of the $192.31 was due *in equity*. They also had conversation concerning the troubles existing between Logan and his wife, and after a great deal of conversation Mrs. Logan finally consented to sign the instrument upon the consideration that the $100 still due should be paid to her and not to Logan. She at that time knew nothing about the transactions that had previously taken place between the plaintiff and Logan, or about the instrument which she executed except what was told to her by Adams; and the only way in which she executed the instrument was by touching the pen that made the mark which represented her signature. If the real consideration for the contract was $350, then the plaintiff would still be owing the defendants on the contract $127.69; but he has never admitted that he owes more than $100, and has never tendered more

than that amount, and the record does not show that he has even kept that tender good. Therefore, when Mrs. Logan executed the instrument she was laboring under at least two misapprehensions: First, she believed the claim existing against the land was about $57.69 more than it actually was, and that the consideration for the sale of the land was $27.69 more than the plaintiff admits it to be; and these misapprehensions were induced and brought about by Adams, who was evidently acting as the plaintiff's agent. Under the circumstances of this case, we do not think that the defendants ought to be compelled to specifically perform their supposed contract. The contract, under the circumstances, did not embody such a joint consent of the husband and wife as would under the homestead laws and in equity make the contract binding. Assuming that Logan himself had knowledge of all the circumstances that led to the execution of the contract, and knew precisely what the consideration was, still, Mrs. Logan did not have any such knowledge, and she signed and executed the contract under misapprehensions brought about by the plaintiff's agent. Now taking the nature and character of the contract, the inadequacy of the consideration for the property in controversy, the fact that the contract was signed at different times and without any consultation between the parties signing the same, and the fact that Mrs. Logan signed the same under misapprehensions as to the amount of the consideration and the amount of the mortgage lien, and misapprehensions induced by the agent of the plaintiff, we do not think that there is sufficient equity in the plaintiff's claim to authorize the specific enforcement thereof.

1. Homestead; conveyance without joint consent.

"Upon breach of a contract for the sale of real estate, it is not a matter of course for the court to enter a decree of specific performance. That will be done only when upon all the facts it is equitable it should be done. He who asks specific performance should show the facts which make such a decree equitable; and a failure to do this justifies a refusal of the decree." (*Fowler v. Marshall*, 29 Kas. 665, syl., ¶¶ 1 and 2.)

"While in legal contemplation two persons may make a contract that would be enforced at law, yet if it should seem probable from the facts of the case that the parties did not in fact and in equity agree to the same thing, the supposed contract would not be decreed in equity to be enforced specifically." (*Burkhalter v. Jones,* 32 Kas. 5, syl., ¶ 1; same case, 3 Pac. Rep. 559.)

In the Kansas report the word "specifically" is erroneously changed to "especially." In the *Pacific Reporter* it is printed correctly. We have discussed the questions involved in this case as though Mrs. Logan only was misled into signing the contract through misapprehensions. We think, however, that the same result would follow, possibly not for stronger reasons but for slightly different reasons, if both Logan and Mrs. Logan were so misled. A contract will be specifically enforced only where its specific enforcement is equitable; and generally, only where the plaintiff has in equity and good conscience a right to demand its specific enforcement; and generally, where a contract is itself inequitable, and where the defendant has been misled by the plaintiff or his agent into executing it, the contract will not be specifically enforced.

2. Contract; specific performance— when enforced, when not.

The plaintiff did not ask to have his mortgage foreclosed in this case, and therefore there was no error in the failure of the court below to order or adjudge its foreclosure. The plaintiff may still enforce his mortgage in another suit, if he chooses.

This, we think, disposes of all the substantial questions involved in this case.

The judgment of the court below will be affirmed.

All the Justices concurring.