Bleckley, Chief Justice.
The action was brought by Mrs. Werner to recover the land and to establish a copy of the deed of conveyance which Rawson, the defendant, had executed to her and afterwards destroyed. The controlling legal question arises upon the equitable relief prayed for by Rawson in his answer, to wit: that the deed of conveyance be cancelled and set aside on the ground of mistake. The mistake, if any, was not alone in the deed, but in the contract itself, and consisted primarily of a difference of opinion or understanding as to the price at which the property was to be sold and conveyed by the defendant, Rawson, to the plaintiff, Mrs. Werner, the vendor understanding the price to be $5,000.00, and the purchaser (who contracted by her agent, Mr. Simon) understanding it to be $2,500.00. Both the consideration expressed in the deed and the amount of the check delivered in payment of the purchase money conformed to the understanding of the purchaser, so that relatively to these documents, the mistake was not mutual, but only unilateral. Relatively to the contract itself, the mistake was mutual in so far as mutuality *625 consists of mutual misapprehension ; for the vendor had one understanding of the price supposed to be agreed upon, and the purchaser another. But the case may be dealt with as one of mistake on the part of the vendor alone, which mistake, looking to the whole scope of it, consisted, first, in an honest belief that he had named $5,000.00 as the price of the property, and that the purchaser had agreed to pay it; secondly, in a like belief that such was the amount for which the check he received in payment was drawn, when in fact that amount was only $2,500.00.
1. There is a plain distinction between reforming a. writing and cancelling it. Unquestionably it is true> that to enable a court to reform an agreement evidenced by writing on the ground of mistake, it must affirmatively appear that the mistake was common to both parties, and that the writing as executed expresses the-contract as understood by neither. The reason for the-rule is forcibly stated by Ames, C. J., in Diman v. Railroad Co., 5 R. I. 134, who says : “ A court of equity has no power to alter or reform an agreement made between parties, since this would be in truth a power to contract for them; but merely to correct the writing executed as evidence of the agreement, so as to make it express what the parties actually agreed to. It follows, that the mistake which it may correct in such a writing must be, as it is usually expressed, the mistake: of both parties to it; that is, such a mistake in the draughting of the writing as makes it convey the intent or meaning of neither party to the contract. If the court were to reform the writing to make it accord with the intent of one party only to the agreement, who averred and proved that he signed it as it was written by mistake, when it exactly expressed the agreement as understood by the other party, the writing, when so ■altered, would be just as far from expressing the'agree *626 mezzt of the parties as it was before; and the court would have been engaged in the singular office, for a court of equity, of doing right to one party at the expense of a precisely equal wrong to the other.”
“ Equity will not reform a written contract unless the mistake is proved to be the mistake of both parties, but may rescind and cancel a contract upon the ground of a mistake of facts material to the contract of one party <only.” 16 Am. & Eng. Enc. of Law, 647. The mistake “must be mutual if the complainant wishes to ¡have the instrument reformed and not simply set aside, 'because equity cannot undertake to reform, on the ground of the ignorance or misapprehension of one of the parties as to any facts, though it may rescind.” Bispham’s Prin. of Eq. (4tb ed.) §191. So, “ Cancellation is appropriate when there is an apparently valid written agreement or transaction embodied in writing, while in fact, by reason of a mistake of both or one of the parties, either no agreement at all has really been made, since the minds of both paz’ties have failed to zneet upozz the, sazne matters, or else the agreement or transaction is different, with respect to its subject-znatter or terms, from that which was intended.” 2 Pozn. Eq. Jur. (2d ed.) §870. “ A mistake on oize side may be a ground for rescizidizzg a contract, or for refusing to eziforce its specific pez-formance; but it canzzot be a ground for altezing its terms.” Adazns Eq. *171. And see Douglas v. Grant, 12 Ill. App. 278; Dulazzy v. Rogers, 50 Md. 524; Diznan v. Railroad Co., supra. Our code, §8124, expressly declares : “ A distinction exists between reforming a contract and executizzg a contz’act in case of mistake. To' authorize the former, the court must be satisfied by the evidence that the mistake was mutual; but the court may refuse to act in the latter case, if the mistake is confined to the party refusing to execute.” The ziext section pz-ovides that, “In all cases of amis *627 take of fact material to the contract, or other matter affected by it, if the party complaining applies within a reasonable time, equity will relieve.” Another section (2636) declares : “ Mistake of a material fact may, in some cases, justify a rescission of the contract.” For some of the circumstances under which the courts have thought the complaining party entitled to relief, refer to Brown v. Lamphear, 35 Vt. 252, where it appeared that plaintiff unintentionally omitted from a deed conveying land to defendant a reservation of the right to •use water from a certain spring; Paget v. Marshall, L. R. 28 Ch. Div. 255, where plaintiff’, in executing a lease of certain buildings, included therein by mistake a warehouse he had intended to reserve for his own use, which he had refused to rent, but which defendant claimed to be included in the offer he had accepted; Harris v. Pepperell, L. R. 5 Eq. 1, where the plaintiff included in a deed to defendant a piece of land not intended to be so conveyed; also, the similar case of Baxendale v. Seale, 19 Beav. 601. In Webster v. Cecil, 80 Beav. 62, it appeared that defendant, by letter,'offered to sell certain property to plaintiff for 1250Í, and the plaintiff, by letter, accepted the offer. The defendant had, by mistake, inserted' in his letter 1250Z instead of 2250Z, and he immediately gave notice of the error. The court refused to enforce the contract. See, also, Burkhalter v. Jones, 32 Kan. 5.
In view of the authorities above cited, we do not think the contention of the plaintiff in error can be maintained, and it follows, necessaiúly, that there was no error in declining to instruct the jury as requested. The charge complained of we think fairly and clearly presented the law governing the case, and properly stated the issues of fact to be determined by the jury in accordance therewith.
2. It is insisted that the conclusion at which the jury arrived was not warranted by the evidence; that de *628 fendant had an equal opportunity with plaintiff’s agent for knowing the truth, and if he was mistaken, he was grossly negligent in failing to inform himself, and should take the consequences of his neglect. So far as the evidence discloses, the only neglect or want of diligence with which the defendant is chargeable was his failure to note the consideration recited in the deed before signing the same, and his omission to examine the check handed him' in payment to ascertain whether or not it was drawn for the amount at which he had agreed to sell his property. He explains his failure to discover the consideration expressed in the deed by stating that it was not drawn by himself, but by plaintiff’s attorney; that upon handing him the deed, plaintiff’s agent remarked, “We have exactly followed the old deed,” by which he meant to allude to the description only, and defendant directed his attention solely to that portion of the deed to see that the property had been correctly described. It nowhere appears that defendant had the slightest reason to anticipate that the plaintiff’s agent had misunderstood his offer, and believing, as he says he did, that plaintiff' had agreed to a consideration of $5,000.00, and that this matter had been definitely and satisfactorily settled, there was -nothing to specially call his attention to the fact that the consideration recited in the deed was only $2,500.00. As to the check, he says it was handed him by plaintiff’s agent, half doubled up, after they had reached the street on their way to a notary’s to have the deed attested; that his hands were full; he had an umbrella in one hand, and something in the other; that he is a man over 70 years of age, and could not read without his glasses, so simply placed the check in his hat and continued down the street, without looking to see for what amount the check was drawn. This is the sum and substance of defendant’s negligence or lack of diligence.
*629 In discussing the subject of what negligence will preclude relief in case of mistake, Pomeroy says: It lias sometimos been said in very general terms that a mistake resulting from the complaining party’s own negligence, will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say, that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby.” Pomeroy’s Eq. Jur. §856. Citing this eminent author, the Supreme Court of Minnesota laid down the following rule in Thwing v. Hall & Bucey Lumber Co., 41 N. W. Rep. 815: “Affirmative or-defensive relief, such as the circumstances of the case may require, may be granted from the consequences of a mistake of any fact which is a material element in the transaction, and which is not the result of the mistaken party’s own violation of some positive legal duty, if there be no adequate remedy at law.” Means of comparing the conduct of the defendant in the present ease with what has been held to be sufficient diligence will be afforded by reference to authorities cited supra. We are certainly not prepared to assert, as matter of law, that the negligence attributable to Mr. Rawson in the present case was such as to disen *630 title him to relief. The question of his want of diligence was fairly presented to the jury for determination, and we are satisfied to abide by their conclusion.
An examination of the evidence leaves no doubt that Mr. Rawson as sincerely believed he was selling for a consideration of $5,000.00' as did Mr. Simon that he was buying the property at $2,500.00. There was a mutual mistake as to the terms of sale continuing throughout the entire negotiations, and upon this all important element of the contract the minds of the parties never agreed. The difficulty seems to have been that neither expressed with sufficient clearness the price to which he was willing to agree, and the mistake which arose as to this matter is as much attributable to Mr. Simon as to the defendant. To question the genuineness of the mistake- which defendant sets up in his answer certainly see-ms-unwarranted. His testimony as to the same bears the stamp of truth, and is supported, not alone by strong probability, but by every material circumstance which marks the transaction. As to the amount at which he priced the property to plaintiff’s agent, he is supported by the testimony of his son, who swears he was present during the first conversation between the parties, and says, “ Father said his price was $2,500.00 apiece for the lots.” It seems that the son, as well as the father, was in error as to the price Mr. Simon agreed to pay, for he testifies further : “After Mr. Simon had looked at the lots, he proposed to take the two at $2,500.00 apiece, if they could be had at the same price each. I heard the second conversation. Mr. Simon said he and his sister had looked at the property ; they were well satisfied with the property ; they would take the two lots at $2,500.00 apiece. I was listening and heard distinctly. I was considerably interested in it, because I thought he sold them too cheap.” It was shown the property consisted of two improved city lots, *631 separate and distinct, and though adjoining, divided by a partition fence, within ten minutes walk from the heart of the city. Five-room cottages had been erected on both lots, at a cost for the two, defendant testifies, of $2,200.00, which amount did not include the costof fences or other necessary improvements. In addition to what defendant himself testified in regard to the value he placed upon the property, a witness was introduced in his behalf who testified that in 1888 he was in the real estate business, and “was familiar with the value of property over on Formwalt street, in that part of the city, at that time,” and that “ $3,000.00 a lot for the two lots would have been very cheap in 1888, three years ago.” The only way in which this testimony was met by the plaintiff' was by showing the property to have been returned for taxes in 1888 at $3,000, the same valuation at which it was assessed for taxation by the city. It is true ■ Mr. Simon says he thought the price he agreed to pay, $2,500.00, was a fair price for the propei’ty, but he also distinctly says, “At that time, I was not very well posted about property. We were looking more to the income,” by which latter remark he referred to the price for which the property could be rented. But a circumstance even more strongly in favor of defendant is the fact that immediately upon his discovery of the amount stated in the check he had received in payment, he at once, and without the slightest delay, repudiated the whole transaction. His testimony is uncontradicted that after signing the deed, he crossed the street to the bank at which the check was made payable, and it was not until after he had indorsed the check that he discovered the amount expressed therein to be but $2,500.00. Without delay he returned to Mr. Simon’s office and gave notice of the mistake which had been made. As to what there transpired, it may be best to quote Mr. Simon’s own statement: “ I went back to my store, in *632 tending tbat evening to have tbe deed recorded. About fifteen minutes after tbat—about tbat time—Mr. itawson came back and asked me to show bim tbe deed. I banded bim tbe deed, and with tbat be threw tbe check on tbe counter and said something about a mistake having been made, and went out of tbe store with tbe deed.” No further steps looking to a sale or purchase of tbe property were taken by either party, and each was left in the position be occupied prior to the commencement of negotiations. It will be 'seen, therefore, that a rescission of tbe contract and a cancellation of the deed will do injustice to neither of tbe parties, nor will it deprive tbe plaintiff of airy right to which in equity and good conscience she may be entitled.
We are entirely satisfied with tbe verdict of the jury, and tberé was no error in refusing to grant a new trial.

Judgment affirmed.