N. B. THOMPSON *et al.* V. MICHAEL NIGGLEY *et al.*

WRITTEN SECURITIES, *Extorted by Fraud and Duress, May be Avoided.*
Written securities, extorted by means of threats of prosecution for
criminal offenses of which the party threatened was guilty in fact,
but which were in no manner connected with the demand for which
compensation was sought, may be avoided by the parties executing
them, not only in the hands of the original payee, but of his assignees
having notice of the circumstances under which such securities were
taken.

*Error from Marshall District Court.*

ACTION by *Thompson* and another against *Niggley* and
wife to recover on a note and mortgage. Judgment for the
defendants at the February term, 1890. The plaintiffs bring
the case here. The opinion states the facts.

*J. A. Broughten,* for plaintiffs in error.

*E. A. Berry,* and *Mann & Redmond,* for defendants in
error.

The opinion of the court was delivered by

ALLEN, J.: N. B. Thompson and H. F. Talbot, as part-
ners, brought suit on a note executed by Michael Niggley
and Fannie Niggley, his wife, for $1,250, payable to Ru-
dolph Summers, and to foreclose mortgages given to secure
the same. The plaintiffs claimed to be purchasers of the
note and mortgages from Summers. The defendants, in
their answer, admit the execution of the note and mortgages,
but allege that they were without consideration, and were
obtained by fraud and duress. It appears that Michael
Niggley kept a billiard saloon in Waterville; that late one
evening, as he was taking his cash from his money drawer,
preparatory to closing up for the night, he had a revolver
out, which accidentally went off, hitting Summers. Sum-
mers, though seriously hurt, recovered so as to be able to get
about. Some friends of his soon after talked to Niggley
about a settlement of Summers's claim for damages growing

out of the injury. On the day on which the note and mortgages were executed, friends of Summers again approached Niggley with reference to a settlement, telling him that, if charges were preferred against him for selling whisky, they would have to swear against him. They induced Niggley to go with them to the office of one Griffiths, who acted as attorney for Summers. While there, there was further talk about a settlement of Summers's claim. Summers and several of his friends were present. They kept Niggley there and sent for his wife, who left a very sick child and went to Griffiths' room. Griffiths threatened to prosecute Niggley for selling whisky if he did not accede to his demands and execute the note and mortgages sued on. The case was submitted to a jury, who rendered a general verdict in favor of the defendants, and also, in answer to special questions, found that the signatures, both of Niggley and his wife, were obtained by duress, and through fear of criminal prosecution. Niggley himself testified on the witness stand that he had been selling liquor in violation of law.

The principal question discussed in the briefs is, whether a charge of duress can be maintained by showing threats to prosecute a person for an offense of which he is in fact guilty. It does not appear that any complaint had been filed against Niggley, nor was there any pretense that process had been issued for his arrest. Long lists of authorities are cited by counsel on both sides for the purpose of showing the rules that have been declared by the various courts as to what constitutes duress. It is impossible to extract from the cases any complete definition which has been uniformly adhered to. There are cases holding that mere threats of criminal prosecution, when no warrant has been issued, do not constitute duress. (*Higgins v. Brown,* 78 Me. 473; *Harmon v. Harmon,* 61 id. 227; *Buchanan v. Sahlein,* 9 Mo. App. 552.) This court, however, held, in the case of *National Bank v. Croco,* 46 Kas. 620, that

"If the creditor operated upon the fears of the husband by threats of arrest and imprisonment, believed by him to

be imminent, and thus overcame his will, and through fear and undue influence compelled him to sign the mortgage, the signature is not binding; and if the wife was induced to execute the mortgage from fear excited by threats made to her by the creditor of an illegal criminal prosecution against her husband, the instrument thus obtained will not be binding upon her."

This case settles the question as to the necessity that a prosecution should have been actually commenced in order to establish duress, but does not touch the point presented here, as to whether duress can be predicated on threats of a lawful arrest and prosecution. It appears from the testimony of Niggley himself that he was guilty of the offenses for which he was threatened with prosecution, and the duress consisted mainly, if not entirely, in the fears excited in the mind of the defendant by threats of such prosecution. There are many cases holding that the threat of a lawful arrest does not constitute duress in such sense as to discharge the person threatened from liability on a contract which he has been induced to sign by means of such threats. (*Nealley v. Greenough*, 25 N. H. 325; *Compton v. Bank*, 96 Ill. 301; *Eddy v. Herrin*, 17 Me. 339; *Clark v. Turnbull*, 47 N. J. L. 265; *Mundy v. Whittemore*, 15 Neb. 647; *Sanford v. Somborger*, 26 id. 295.) For other cases, see 6 Am. & Eng. Encyc. of Law, p. 64, *et seq.*

We have examined a great number of cases declaring this doctrine, in all of which it appeared that the threat made was of a prosecution for the particular matter for which payment or settlement was sought. In many of the older cases, as well as in some of the later ones, the arrest threatened was on process issued or to be issued in a civil action for the collection of the plaintiff's demand. In this case, the threats made were of a prosecution for offenses in no wise connected with Summers's claim. The facts that Niggley was guilty of violations of the law of the state, and that Summers, his attorney and friends knew of the facts showing his guilt themselves, and were witnesses to the unlawful sales of liquor, were used

as a menace to drive Niggley into a settlement of Summers's claim. The court of appeals of New York expressly denies the doctrine that the threat must be of an unlawful arrest. In *Adams v. National Bank*, 33 N. E. Rep. 7, it was held, "that money paid by a wife in settlement of her husband's debt, upon the threat by the creditor to arrest the husband if the debt was not paid, may be recovered back, though there was lawful ground for arresting the husband." The case of *Schoener v. Lesseaur*, 13 N. E. Rep. 741, also holds that duress may be exercised through threats of prosecution for an offense of which the party is actually guilty. See, also, *Johnson v. Zuschlag*, 34 Tex. 371; *Taylor v. Jacques*, 106 Mass. 291; *Davis v. Luster*, 64 Mo. 43. In *Seiber v. Price*, 26 Mich. 522, it was said:

"An arrest by a legal warrant on a criminal charge, to compel the satisfaction of a mere private civil demand, is a misuse of process, a fraud upon the law, and an illegal arrest, as respects the party who knowingly and purposely perverts the machinery of the law in that way. And papers obtained under the pressure of such a proceeding by the party promoting it are at least voidable as against him, at the election of the party thus constrained to make them."

Summers clearly had no right to make use of his knowledge of the guilt of Niggley to force him to settle his demand. The jury have found that it was the threats and fear of their being carried into execution that caused Niggley and his wife to yield to Summers's demand and execute the note and mortgages in question, thus incumbering their homestead to the amount of $1,250. If in this case the only threats used were those of prosecution for the shooting, the cases cited by plaintiffs would be more strictly in point.

We are not inclined to encourage a resort to such pressure as was used in this instance to compel the settlement of private demands. Neither Summers nor his friends had any right whatever to agree to abstain from prosecuting Niggley for any offense he had in fact committed, and while in this case there is no showing of an agreement on their part to ab-

stain from such prosecutions, or to withhold evidence within their knowledge, they impliedly held out the hope that, if Niggley yielded to Summers's demand, he would not be troubled with the criminal charges. Under the facts disclosed by the testimony, it would appear that Summers had a valid claim against Niggley for damages, which he had a right to prosecute in court if he failed to obtain settlement otherwise, but he had no claim to security on Niggley's homestead, nor could he by any legal proceeding have compelled Mrs. Niggley to relinquish her rights thereto. This action, being founded wholly on the instruments obtained by duress, could not be maintained if brought by Summers. The acknowledgments of the mortgages were taken by Thompson, one of the plaintiffs in the case, who claims as assignee of Summers, and it appears from the testimony that he came into the room where the instruments were executed, and was informed of sufficient facts to at least put him on inquiry, if not to fully apprise him of what had been done. It is not seriously contended that the plaintiffs were innocent purchasers of the note.

As the charge of the court was substantially in accord with the views hereinbefore expressed, and as the jury found explicitly in favor of the defendants upon the question of duress, we think no error appears in the instructions. We have also examined all the rulings of the court as to the admissibility of evidence to which attention is called in the brief, but find no material error there. Under the issue presented, the exclusion of the evidence of Doctor Humphreyville, as to the extent and character of the injury sustained by Summers, was immaterial. If this were an action between Summers and Michael Niggley to recover damages for the injury, the evidence might be material, but this is a case to which Summers is not a party, and which is founded solely on written instruments. The plaintiffs must stand or fall by them alone. We perceive no substantial error in the record, and the judgment is affirmed.

*Written securities, extorted by fraud and duress, may be avoided.*

All the Justices concurring.