THE WILLIAMSON, HALSELL, FRAZIER COMPANY v.
JOSEPH J. ACKERMAN *et al.*

No. 15,440. (94 Pac. 807.)

SYLLABUS BY THE COURT.

1. CONTRACTS — *Duress* — *Threat to Prosecute Obligor's Son.* A contract, in order to be valid and binding, must be the result of the free assent of the parties making it; and where a father is coerced into executing a mortgage to secure the payment of a defalcation of his son, by threats of the arrest and prosecution of the son for embezzlement if such security is not given, the mortgage may be avoided on the ground of duress.

2. ———— *Test to Determine Whether there Was Duress.* The

test in determining whether there was duress is not so much the means by which the father was .compelled to execute the mortgage as it is the state of mind induced by the means employed—the fear which made it impossible for him to exercise his own free will.

3. ———— *Guilt or Innocence of Accused Immaterial.* If the threats of the arrest and prosecution of the son operated to deprive the father of his free will-power and to constrain the execution of the mortgage, the actual guilt or innocence of the son upon the charge of embezzlement is not a material question in determining whether there was duress, and in charging the jury upon that defense it is not essential that the court should give a complete definition of the offense of embezzlement.

Error from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed March 7, 1908. Affirmed.

*H. C. Sluss, A. A. Godard,* and *H. E. Valentine,* for plaintiff in error.

*David M. Dale, Samuel B. Amidon, Kos Harris,* and *V. Harris,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This suit was brought by the Williamson, Halsell, Frazier Company to recover on three notes, one for $1166.66 and each of the other two for $1166.67, due respectively in one, two and three years after date, signed by Joseph J. Ackerman and his two children, John H. Ackerman and Mary H. Sproat, and to foreclose a mortgage on the home of Joseph J. Ackerman purporting to secure the payment of the notes.

The defense of Joseph J. Ackerman was that the notes and mortgage were signed under duress and therefore were unenforceable, and this defense prevailed. The defendants alleged and offered testimony to show that during the years 1903 and 1904 John H. Ackerman was an employee of the plaintiff corporation, and that Halsell, a representative of the com-

pany, came to Joseph J. Ackerman and informed him that John had embezzled about $4000 of the company's money; that he, Halsell, had obtained and had in his pocket a warrant for John's arrest for embezzlement, and that there was a deputy sheriff waiting in an adjoining room to serve the warrant, and unless the notes and mortgage were signed the warrant would be served and John would be convicted and sent to the penitentiary; that when the father and sister of John asked that they be permitted to consult with John about signing the papers Halsell objected, saying that he would deliver the warrant which he had in his pocket to the deputy sheriff and that the prosecution would go on, but if the notes and mortgage were signed there would be no prosecution. After negotiations which continued for about two hours, Halsell insisting that in case the notes and mortgage were not executed John would be arrested and locked up but if they were given no arrest would be made, and after Mrs. Sproat, who was frightened and crying, had begged her father to save John, he signed the notes and mortgage in suit. Two days afterward a flaw was found in the mortgage, and a representative of the company came to Wichita and demanded a corrected mortgage; and when Mr. Ackerman held back he was informed that a refusal meant a prosecution and the penitentiary for his son, and under these threats a corrected mortgage was executed. There was abundant testimony to show that the notes and mortgage were secured from Ackerman by threats of the arrest and prosecution of his son, and that they would never have been executed if Ackerman had been left to act of his own free will.

The plaintiff complains that the trial court did not properly define the crime of embezzlement, and thus took from the consideration of the jury an element necessary to determine whether or not John was guilty of the offense. The suit was not one to determine the guilt or innocence of John, nor was the matter of his actual guilt an essential feature of the defense of

duress. The point for decision was whether the threats of arrest and prosecution of John put the father in fear, and thus overcame his will and rendered him incompetent to contract. If there was no free will in the execution of the notes and mortgage there is no contract, nor any binding obligation. Under the modern theory duress is to be tested, not by the nature of the acts or threats, but rather by the state of mind of the victim induced by such acts and threats.

In *Galusha and another v. Sherman and others*, 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417, there was a full discussion of the subject, and of the development of the law from the ancient doctrine that duress should be tested by the means used to overcome the person threatened to the later and better one of the condition of the mind induced by the threats. It was there said:

"The making of a contract requires the free exercise of the will-power of the contracting parties, and the free meeting and blending of their minds. In the absence of that, the essential of a contract is wanting; and if such absence be produced by the wrongful conduct of one party to the transaction, or conduct for which he is responsible, whereby the other party, for the time being, through fear, is bereft of his free will-power, for the purpose of obtaining the contract, and it is thereby obtained, such contract may be avoided on the ground of duress. There is no legal standard of resistance which a party so circumstanced must exercise at his peril to protect himself. The question in each case is, Was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his will-power, and was such advantage thereby obtained? If the proposition be determined in the affirmative, no matter what the nature of the threatened injury to such person, or his property, or the person or liberty of his wife or child, the advantage thereby obtained cannot be retained." (Page 277.)

Following the same theory, neither the legality of the threatened arrest and prosecution nor the guilt or innocence of John was material to the determination

of whether there was duress. The conduct of John, whatever it may have been, was no excuse or justification for intimidating and coercing the father to pay John's debt or to give a mortgage on his home to secure the payment of such debt. If it be assumed that John misappropriated the money of the plaintiff, and was therefore indebted to it for a large sum of money, nevertheless plaintiff's representatives had no right to use, or threaten the use of, the criminal law to make the father pay or secure the debt. Such a method is not an appropriate one for enforcing the payment of a debt by the debtor himself; much less to compel the securing of it by one who was in no sense liable for its payment. In *Heaton v. Bank,* 59 Kan. 281, 52 Pac. 876, where it was held that a wife was not bound by a contract induced by the threats of parties that if she failed to enter into the contract they would cause the arrest and imprisonment of her husband, the court, in speaking of the misuse of the criminal law, said:

"Imprisonment may be lawful so far as the public or those representing the public are concerned, but is it ever lawful for a party to force the signing of a contract, the surrender of property, or the obtaining of some other private advantage, against the will of another, by using or threatening to use the machinery of the law intended for the protection of the public and the punishment of criminals?" (Page 294.)

In *Thompson v. Niggley,* 53 Kan. 664, 35 Pac. 290, 26 L. R. A. 803, the question whether a charge of duress could be maintained by showing threats to prosecute a person for an offense of which he was in fact guilty was considered. There Niggley and his wife were induced to execute a note, and also a mortgage upon their home, by threats of the prosecution of Niggley for certain offenses which he conceded were committed but which were in no way connected with the debt sought to be secured. The court repudiated the doctrine that duress could not be predicated upon a threatened arrest and prosecution for an offense of which the party

was in fact guilty, saying: "We are not inclined to encourge a resort to such pressure as was used in this instance to compel the settlement of private demands." (Page 667.) The decision, as formulated in the syllabus, reads:

"Written securities, extorted by means of threats of prosecution for criminal offenses of which the party threatened was guilty in fact, but which were in no manner connected with the demand for which compensation was sought, may be avoided by the parties executing them, not only in the hands of the original payee, but of his assignees having notice of the circumstances under which such securities were taken."

In a very early case the supreme court of New Hampshire, in considering what amounted to duress, said:

"Where there is an arrest for improper purposes, without just cause, or an arrest for a just cause, but without lawful authority, or an arrest for a just cause, and under lawful authority, for an improper purpose, and the person arrested pays money for his enlargment, he may be considered as having paid the money by duress of imprisonment, and may recover it back in an action for money had and received." (*Richardson v. Duncan*, 3 N. H. 508, syllabus.)

The supreme court of Alabama in a recent case ruled that threats of unlawful imprisonment were not necessary to constitute duress, and that, if there was a liability for arrest and imprisonment and such liability was used to overcome the will and compel the making of a contract which would otherwise not have been made, it amounted to duress. In disposing of the case the court said:

"It was never contemplated in the law that either the actual or threatened use or misuse of criminal process, legal or illegal, should be resorted to for the purpose of compelling the payment of a mere debt, although it may be justly owing and due, or to coerce the making of contracts or agreements. from which advantage is to be derived by the party employing such threats. Ample civil remedies are afforded in the law to enforce the payment of debts and the performance of

contracts, but the criminal law and the machinery for its enforcement have a wholly different purpose, and cannot be employed to interfere with that wise and just policy of the law, that all contracts and agreements shall be founded upon the exercise of the free will of the parties, which is the real essence of all contracts." (*Hartford Fire Insurance Co. v. Kirkpatrick, Dunn & Co.,* 111 Ala. 456, 466, 20 South. 651.)

(See, also, *Morse v. Woodworth,* 155 Mass. 233, 27 N. E. 1010, 29 N. E. 525; *Adams v. Irving National Bank,* 116 N. Y. 606, 23 N. E. 7, 6 L. R. A. 491, 15 Am. St. Rep. 447; *Henry v. State Bank,* 131 Iowa, 97, 107 N. W. 1034.)

The important consideration in cases like this one is not whether there was ground for the arrest or imprisonment threatened, but rather whether the free will of the party making the contract was constrained by the threats of the other. It is clear, therefore, that an explicit and complete definition of the crime of embezzlement was not essential in charging the jury upon the issues pleaded in this case. If, for any reason, it had been necessary to advise the jury as to the elements of embezzlement, either with respect to duress or to the stifling of a prosecution, there would be little reason to complain of the instruction given. The complaint is that in one part of the charge the court said that the taking of an employer's money without returning it upon demand is a felony under the statute. It is contended that the court should have stated that it is the fraudulent misappropriation of the money which constitutes the crime of embezzlement. The phrase was used by the court, not in defining embezzlement, but for the purpose of informing the jury that embezzlement was a felony. It appears that when the court undertook to define the crime of embezzlement it was fully and correctly done, the statutory language being employed. In no view can the statement criticized be deemed to have prejudiced the plaintiff.

In the same connection it is said that there is an ab-

sence of evidence showing an intention on the part of John to appropriate the plaintiff's money, a contention that is hardly consistent with plaintiff's own evidence, in which John is characterized as a defaulter and an embezzler. There is no lack of testimony to show threats of the arrest and prosecution of John, and that the notes and mortgage were procured through fear excited by the threats. Joseph J. Ackerman was subject to duress because of the threats directed against a member of his family as much as if they had been directed against himself. In *National Bank v. Croco,* 46 Kan. 620, 26 Pac. 939, as well as in *Heaton v. Bank,* 59 Kan. 281, 52 Pac. 876, it was held that a threatened prosecution of the husband may cause duress of the wife. Many cases may be found in the books where the threatened prosecution of a child amounted to duress of the parent. An illustration may be found in *Williams and another v. Bayley,* L. R. 1 H. L. (Eng.) 200, 35 L. J. Ch. 717, where bankers had acquired paper forged by a young man and had brought pressure upon the father to assume the payment of his son's obligations. The Lord Chancellor spoke of the pressure brought upon the father as of this nature:

" 'We have the means of prosecuting, and so transporting your son. Do you choose to come to his help, and take on yourself the amount of his debts, the amount of his forgeries? If you do, we will not prosecute; if you do not, we will.' That is the plain interpretation of what passed. Is that, or is it not, legal? In my opinion, I am bound to go the length of saying that I do not think it is legal." (L. J. Ch. 722.)

Lord Westbury, in concurring in the judgment, said:

"The question, therefore, is whether a father appealed to under such circumstances to take upon himself an amount of civil liability with the knowledge that unless he does so his son will be exposed to a criminal prosecution, with the certainty of a conviction, can be regarded as a free and voluntary agent? I have no hesitation in saying that no man is safe, or ought

to be safe, who takes a security for the debt of a felon from the father of a felon under such circumstances.

"A contract to give security for the debt of another, which is a contract without consideration, is, above all things, a contract which should be based upon the free and voluntary agency of the individual who enters into it." (L. J. Ch. 725.)

(See, also, *The City National Bank of Dayton, Ohio, v. Kusworm,* 88 Wis. 188, and note thereto in 26 L. R. A. 48.)

Finding no error in the record, the judgment is affirmed.