No. 20,512.

THE FARMERS NATIONAL BANK OF LINCOLN, *Appellee*, v.
JOHN K. FRANCIS and EMMA SNOOK, *Appellants*.

### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Duress—Threats of Prosecution—Instructions.* An instruction that one who has signed a note under duress waives such duress by subsequent payment "unless it is shown that at the time such payment . . . was made that he was still deprived of his freedom of mind or will by reason of such duress," held proper in view of all the other instructions given.

2. SAME—*Duress—Proof Required.* A charge that the law requires proof of duress to be "clear, convincing and decisive" held not to have misled the jury by the use of the latter word.

3. SAME—*Verdict and Findings.* The verdict and findings, having been approved by the trial court, will not be disturbed.

Appeal from Lincoln district court; DALLAS GROVER, judge. Opinion filed April 7, 1917. Affirmed.

*C. L. Kagey*, and *R. M. Anderson*, both of Beloit, for the appellants.

*John J. McCurdy*, of Lincoln, and *Z. C. Millikin*, of Salina, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff bank sued to recover on two promissory notes of $144.41 each with interest and another for $36.05, all signed by the defendants February 16, 1910. From a judgment for $241.41 the defendants appeal. The answers, in ad-

15—100 KAN.

dition to a general denial and an allegation of an unlawful alteration, set up the defense of duress. It was averred that the plaintiff's cashier represented to the defendant, J. K. Francis, that his son, W. G. Francis, had sold cattle upon which the plaintiff had a mortgage, and that unless the amount of his indebtedness were paid or secured at once the bank would prosecute him and send him to the penitentiary; that such indebtedness amounted to $722.05; that if J. K. Francis and his sister, Emma Snook, the other defendant, would execute five notes for $144.41 each the bank would not prosecute the son, but would accept such notes in full settlement of the claim against him; that the father believed and relied on these statements and signed the notes solely to save his son from a criminal prosecution; that he took them to his sister and repeated to her the statements that had been made to him by the cashier, and she, believing and relying thereon, signed the notes solely to protect her nephew from arrest and imprisonment; that afterwards, on finding that the son had not been guilty of any crime and had not defrauded the bank, they demanded the return of the notes which had not yet been paid and the repayment of what the bank had received on account of the others. The jury made special findings that the signatures were not obtained by duress and that the notes were not altered after their execution and delivery. Error is assigned on giving instructions Nos. 9 and 18 and on refusing a new trial, and it is asserted that there was no evidence to warrant the jury's special findings as to duress.

Instruction No. 9 was to the effect that when a note has been obtained by duress and the maker thereafter pays a part of it or renews it he is held to have waived the right to defend on the ground of duress "unless it is shown that at the time such payment or renewal was made that he was still deprived of his freedom of mind or will by reason of such duress." It is contended that this was equivalent to telling the jury that notwithstanding the defendant's refusal to ratify the execution of the notes upon learning of the fraudulent statements by the cashier the defendants could not escape liability unless it was shown that at each time they paid one of the notes these false statements were repeated. The charge hardly bears this con-

Bank v. Francis.

struction, and in instruction No. 8 the jury were told, touching the plaintiff's claim that the defendants had by their acts ratified the notes, that "such conduct would not constitute ratification so long as the influence of duress continued and so long as the minds of the aggrieved defendant or defendants continued to be dominated by the threats." It will be observed that instruction No. 9 assumes that the subsequent payment therein mentioned was made "with the knowledge of such circumstances." Certainly if one who has been induced by duress or fraud to sign a note makes a payment thereon after he knows the circumstances he should not be relieved from liability, unless he made such payment under the influence of the same duress or fraud which induced him to sign it in the first place.

Instruction No. 18 was in these words:

"A mere preponderance of evidence is not sufficient in law to establish duress or fraud as claimed by the defendants in this case. The law requires that the proof of duress or fraud must be clear, convincing and decisive."

Counsel present numerous definitions of the latter word, and argue therefrom that this charge placed the defendants in the attitude of having to prove duress beyond reasonable doubt. To this counsel for the plaintiff respond that the language used means substantially the same as that repeatedly approved by this court, such as "strong and convincing," "strong and satisfactory," "decided and satisfactory," and one decision from another state that the evidence must be satisfactory and conclusive. It is further suggested that if there be any slight distinction between the language used and that judicially approved it is too slight for a ground of reversal because practically nonprejudicial. The jury were previously told at least half a dozen times, in effect, that the defense of duress must be established by a preponderance of the evidence. Instruction No. 17 advised the jury that whether the evidence preponderated in favor of one side or the other must be determined from its weight and probability and not from the number of witnesses. Then followed the instruction in question. The court takes the view that the jury were not misled by the word "decisive" in connection with the other language and other instructions and that no error was committed in this respect.

The jury were charged that duress exists when the person signing the notes is induced so to do "by reason of being put in fear by threats of arresting him or one of his relatives and charging such person with a crime, when the threats and the fear induced thereby are such as to deprive the party signing the note, and do deprive such party, of the exercise of his free will in the signing of the notes." Further, that in addition to threats to prosecute the son "it must also appear that there was an express or implied promise on the part of Stelson not to prosecute said Walter Francis if the notes were given. And it must further appear that such threats so operated upon the minds of the defendants as to deprive them of their freedom of mind and will for the time being, and that they signed said notes solely by reason of such threats." Also that unless the statements made by the cashier Stelson to the defendant John K. Francis were made to Mrs. Snook at the direction and by the authority of Stelson they should find against Mrs. Snook.

Instruction 11 was as follows:

"The jury are instructed that if the witness Stelson stated to the defendant John K. Francis, in substance, that unless he fixed up the matter of Walter G. Francis selling mortgaged property by giving notes signed by him and defendant Emma Snook, that the bank would send and get Walter and it would mean from three to five years in the penitentiary, and that said Stelson further stated to said John K. Francis that if the notes were given that the matter would be dropped, and that said John K. Francis was thereby solely induced to sign said notes, such action upon the part of said Stelson would amount in law to duress by the plaintiff bank upon the defendant John K. Francis."

No complaint is made of any of these instructions. And in view of this fact it is necessary to revert to the evidence in order to see whether the jury had any evidence on which to base their findings that there was no duress. Plaintiff's counsel take the position that the defendants, as "exhibits," so impressed the jury that their verbal testimony was deemed entirely negligible, but their own counter-abstract contains the following among other items of the cashier's evidence:

"Q. Then you said to him you would either get him or get the cattle? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. You did not say anything about the penitentiary? A. No, sir, I do not think so.

Bank v. Francis.

"Q. Never said a word about the penitentiary?  A.  I do not think I did.

"Q.  Well, do you know?  A.  I know that I did not."

In another place the witness testified:

"I told him that I thought he must have some cattle because I had a mortgage on the cattle, and I read the mortgage to him.  I said if he has n't got any cattle we will get him.  Mr. Francis then said that he knew we could get him because they had got *him* at one time down in Oklahoma.  Then he wanted to know if there was not some way to settle this up."

At another place:

"Q.  After you made this threat you think he said that he would get it fixed up with a note?  A.  He wanted to know if we could not fix it up.

"Q.  Then you promised him if they fixed it up you would not get the boy?  A.  It would be satisfactory if we got our note fixed up."

John K. Francis testified that Stelson told him that if he would fix it up he would not prosecute—

"But if I did n't he would prosecute and send him to the penitentiary. That it would mean from three to five years. . . . He said, 'If you will get your sister and your father on these notes they will make them good and I will give you all the time you want; I will make it for five years without interest, as you don't get anything out of it, and we could be spending more money to get him back and send him to the penitentiary, but we don't want to do it; we want our money back.

"Q.  Now, what did you say at that time that you say he asked you to have your father and Mrs. Snook sign these notes?  A.  I told him I would take them up there and see what they had to say.  He says, 'You tell them the circumstances in the case'; he says, 'You tell them just how the circumstances are; if there is n't something done we will have to send and get him, and it looks like a shame to send him over the road from three to five years for a small amount like that.' "

Mrs. Walter Francis testified as to what Stelson said to her father-in-law:

"Well, he said that he wanted some notes fixed up; he would hunt my husband, go after him and pen him, he said, from three to five years."

Frank B. Francis, a brother of John K. Francis, testified that the latter told Mrs. Snook he had drawn up some notes to get her and her father to sign—

"That his boy Walter had got into trouble and threatened to fetch him back and put him in the penitentiary if he did n't get these notes fixed up, and wanted to know if she would sign them; her and father.

"Q.  Did he say who threatened?  A.  He said the bank did; Mr. Stelson had been there to his house. . . . He asked her if she would

sign the notes, her and father, and she said she did n't want father to sign them on account he was poorly; if it was going to cause him trouble without her signing them, she would sign the notes with him to help him out. . . . He told her Mr. Stelson had sent him up there and requested him to see her and have her sign those notes, and if she did n't sign them, he would have the boy brought back and prosecuted."

Mr. Stelson testified, among other things—

"I said we would get him.

"Q. He did n't say anything about getting this fixed up until after you made the threat you would get the boy if it was n't fixed? A. I think that was about the first thing I said, I would get the boy if I did n't get the cattle.

"Q. After you made this threat, you think he said that he could get it fixed up with a note? A. Wanted to know if we could n't get it fixed up.

"Q. Then you promised him if they fixed it up you would n't get the boy? A. It would be satisfactory if we got our note fixed up.

"Q. You kept your promise? A. Yes, sir."

Mrs. John K. Francis testified:

"Is defendant's wife; was present at a conversation between Stelson and her husband and heard Stelson tell him that if he did n't fix up the notes he would send the boy to the penitentiary for a certain period of years."

The jury and the trial court saw and heard the witnesses. The former returned the verdict and made the findings. The latter approved them. The court is not disposed to set them aside. Certain other matters are complained of but require no discussion. Finding no substantially prejudicial' error the judgment is affirmed.

WEST, J. (dissenting) : To my mind the evidence of duress is convincing and overwhelming. For all practical purposes it was admitted by the cashier himself, at least so far as John K. Francis is concerned. The trial court's definition of duress was in line with *Williamson v. Ackerman,* 77 Kan. 502, 94 Pac. 807, referred to with approval in *Bank v. Bay,* 90 Kan. 506, 135 Pac. 584. The case itself somewhat resembles *Smith v. Bank,* 90 Kan. 299, 133 Pac. 428, only there the threatened prosecution was entirely without basis, and here there appears to have been some ground for claiming that the young man had, to some extent, violated the law concerning the disposal of mortgaged property. While, as

counsel suggests, the two defendants may have been fitly regarded as "exhibits" by the jury, there is no indication that their brother or that Mrs. Francis or the wife of the young man bore any facial evidence of mendacity; and certainly when the testimony of all of them was practically admitted by the cashier of the bank, mannerisms and lack of pulchritude should not subvert the rules of law and the principles of justice.

Again, it was said in *Tanton v. Martin,* 80 Kan. 22, 101 Pac. 461, that—

"The preponderance which overcomes the presumption of honesty and innocence and all opposing evidence and is such as will lead a reasonable man to the conclusion that fraud exists, meets the requirements of the law." (Syl. ¶ 2.)

In view of all the positive evidence on behalf of the defendants and the admission of the cashier upon the stand the jury should not have been told that before the defense of duress could be established it must be proved by evidence not only clear and convincing but decisive. We are required by the statute (Gen. Stat. 1915, § 10973, subdiv. 2) to construe words and phrases according to the approved uses of the language. Dictionaries are supposed to determine what approved usage is. The dictionaries tell us what decisive means.

"Having the power or quality of determining a question, doubt, contest, event, etc., final; conclusive; putting an end to controversy; as, the opinion of the court is *decisive* on the question." (Century Dictionary.)

"Having the power or quality of deciding a question or controversy; putting an end to contest or controversy; final; conclusive." (Webster's New International Dictionary, edition of 1911.)

"Putting an end to uncertainty, debate, or question; determinative; conclusive; as, *decisive* action; the decisive element was the weather." (Funk & Wagnalls New Standard Dictionary.)

"Having the quality of deciding or determining (a question, contest, etc.); conclusive; determinative." (Oxford English Dictionary.)

The result of these definitions is that it is something which turns the scale and decides the case. No such strictness of proof is required, and it was not fair to the defendants to make such requirement in this case. If the able and astute counsel did not avail themselves of the opportunity to impress the weighty meaning of this word upon the minds of the jurors it was not because they lacked the opportunity so to do.

It is not the purpose or policy of the law to compound felonies or withhold prosecutions for criminal offenses by the execution of promissory notes. Whether the bank had a trumped up claim against the boy or whether he had removed the security for the amount it claimed due could make no difference. The question is not the legality of its claim but the effect of its threat. (*Williamson v. Ackerman,* 77 Kan. 502, 94 Pac. 807.

The judgment should not be affirmed.