**Flora E. FIZZELL et al., Plaintiffs,**

v.

**William D. MEEKER, Defendant.**

**Civ. A. No. 17621–3.**

United States District Court,
W. D. Missouri, W. D.

July 15, 1970.

tion 2201, Title 28, United States Code, to determine the rights of plaintiffs and defendant in a deposit of $13,750 (called an "escrow fund") being held by the Home State Bank of Kansas City, Kansas, and for actual and punitive damages.

Plaintiffs state that they had negotiated for the sale of a corporation to Glenn D. and Colleen Z. Ferguson; that the Fergusons, pursuant to a contract entered into with plaintiffs for that purpose, sought and obtained an agreement of the Home State Bank to loan them $125,000, the balance of the original agreed purchase price of $135,000; that on August 5, 1969, defendant telegraphed the bank to assert a claim against the Fergusons for consultant services in the amount of $13,750; that, as a result thereof, plaintiffs were required by the bank to agree to the retention in escrow of $13,750 of the purchase price pending the determination of defendant's claim before the remaining proceeds of the loan would be paid out to plaintiffs; and that defendant later refused to withdraw his claim to the $13,750, though requested to do so by plaintiffs.

Thus the complaint of plaintiffs included: (1) a claim for damages, actual and punitive, for tortious interference with contractual relations in which the issues are ordinarily triable by a jury, 25 Am.Jur.2d § 6, 362; and (2) an action for a declaratory judgment that the contract among plaintiffs, the Fergusons and Home State Bank to retain the fund of $13,750 in an "escrow fund" was made as a result of allegedly wrongful acts of defendant (determined to be economic coercion or duress) and therefore voidable. The issues of wrongful compulsion in the declaratory judgment action are equitable ** and triable to the Court without a jury. Manhattan Milling Co. v. Manhattan Gas & Electric Co., 115 Kan. 712, 225 P. 86, 34 A.L. R. 176, l.c. 179; Wagg v. Herbert, 215

Lancie L. Watts, Kansas City, Mo., for plaintiffs.

Donald W. Giffin, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant.

### DECLARATORY JUDGMENT FOR PLAINTIFFS *

WILLIAM H. BECKER, Chief Judge.

This is a diversity action under the Federal Declaratory Judgment Act, Sec-

---

* Including Findings of Fact, Based Upon Stipulations or a Preponderance of the Evidence, and Conclusions of Law.

** Since there is no material issue of fact on the claim that the contract is voidable, the same result would be reached if it were tried at law.

U.S. 546, 30 S.Ct. 218, 54 L.Ed. 321; 27 Am.Jur.2d § 22, 545, 546.

■ The declaratory judgment claim involves a justiciable "actual controversy" between the parties within the meaning of Section 2201, *supra*. There is, under the facts alleged and proved in this case, an actual substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.

For convenience and to avoid multiple trials the equitable claim for a declaratory judgment and the legal claim for damages were heard simultaneously by the Court and by the jury.

■ In respect to the declaratory judgment claim, the evidence entered in the trial of this cause concluded on June 16, 1970, shows clearly a case of wrongful economic duress or coercion ("business compulsion") by the defendant, resulting in a voidable contract made by plaintiffs, the Fergusons and the Home State Bank.

Defendant, the evidence shows, had been retained by the Fergusons to consult with them on the advisability of purchasing a Missouri corporation, Monatco Manufacturing Corporation ("Monatco of Missouri" hereinafter), from plaintiffs, and finally to assist them in procuring a loan of the purchase price of the corporation. Defendant rendered to the Fergusons advice and service as a consultant, but failed to procure a bank loan or to consummate the purchase.

Sometime before August 5, 1969, the Fergusons independently negotiated an agreement with plaintiffs and the Home State Bank to close the purchase of Monatco of Missouri on August 6, 1969. To finance the purchase the Fergusons paid $10,000 down and secured a commitment from Home State Bank to lend to them $125,000 to be secured by the assets of Monatco of Missouri (on their transfer to a receptacle of title, a Kansas corporation of the same name at the time of closing of the loan). By this means the total purchase price of $135,000 (with minor adjustments) would be paid to plaintiffs, the sellers. Plaintiffs agreed to transfer of the assets to Monatco of Kansas at the time of closing and to the sale to be consummated on August 6, 1969, at the offices of the Home State Bank. Before August 6, in preparation for the closing of the loan and the consummation of the agreement to buy and to sell, counsel for plaintiffs, the Home State Bank, the Fergusons and Monatco of Kansas approved final drafts of the loan and sale documents.

Defendant Meeker learned of the proposed transaction on or before August 5, 1969. He had not been paid by the Fergusons for his services and had reason to believe that the Fergusons had made no immediate plans to pay him when the transaction was to be closed on August 6, 1969. He consulted his counsel, who drafted for him a telegram which he sent to the Home State Bank on August 5, 1969, and which was received by the bank the same day. The telegram read as follows:

"Please take note that I claim the amount of $13,750 for professional services against Glenn D Ferguson and Monatco Manufacturing Corp a Kansas corporation. The peckbrmances (sic) of said services and their value has been ackmowledged (sic) by Glenn D Ferguson and Monatco Manufacturing Corp The extension of any credit by you to either of said parties is subject to this notice."

"William D Meeker
6020 Walnut
Kansas City Mo"

The clear intent of the telegram was to expose the bank to risk of financial loss and thereby to require payment to defendant of the sum of $13,750 (unilaterally fixed by defendant as his compensation) as a condition of closing the sale by plaintiffs to the Fergusons or at least to require immediate negotiation of an acceptable sum and payment thereof to defendant. The telegram nearly had the desired effect. As expected the bank conservatively demurred at closing the

loan. But counsel for the bank and the buyers and sellers agreed in the closing statement to secure the bank against risk by leaving $13,750 in escrow with the bank as a deposit to secure claims of the defendant. The Fergusons further agreed to indemnify the bank from liability, costs and expenses incurred by reason of defendant's claims.

The plaintiffs and the Fergusons and Monatco of Kansas reluctantly entered into these agreements only because of their anxiety to consummate the loan and sale transaction. In the closing statement the Fergusons and Monatco of Kansas denied in writing the claimed indebtedness to the defendant.

Thereafter, though frequently requested informally and formally to release his claim to the deposit, defendant, encouraged by his counsel, persisted, and still persists, in asserting the claim of a "security interest" in the $13,750 deposit. It did not seem to matter to defendant and his counsel that the $13,750 was not the property of the alleged debtors, the Fergusons, nor that it was produced and secured by a lien on assets furnished by plaintiffs. Finally the defendant filed a suit in the District Court of Wyandotte County, Kansas, against the bank, the plaintiffs and the Fergusons as a further means to compel payment of defendant's demands. This suit was still pending against all but the bank when the trial of this case took place. The bank had secured a dismissal of the claim against it.

The evidence clearly shows that the defendant was willing to frustrate the sale and loan he had been retained to accomplish unless his demands were first satisfied. He continued with encouragement of his counsel to prevent the complete closing of the sale by persisting in his claim that plaintiffs by contract vested him with a "security interest" in the $13,750. Thus, defendant has used economic duress or business compulsion to cause the plaintiffs unwillingly to enter into a contract with the bank and the Fergusons to deposit $13,750 from the proceeds of the sale to secure defendant

until defendant's claimed rights therein had been judicially determined. Further, in a conference with counsel for plaintiffs held on August 7, 1968, defendant refused to release any claims to the $13,-750, and by continuing to insist that the money be paid over to him through a suit filed in the District Court of Wyandotte County, Kansas, he has engaged in a continued, determined, persistent, wrongful breach of his contract and his fiduciary duties to Mr. Ferguson and also in the course of this has wrongfully and without cause and in violation of the duties implicit in his contractual status in respect to the loan intentionally engaged in the wrongful act of business compulsion. From August 5 until the present the defendant's intention has been to impose his will on all the parties to the loan and sale transaction and to compel the payment to him of a sum which he then fixed at $13,750 unilaterally, without negotiation, and to deprive the Fergusons and the plaintiffs of the ordinary means of due process and judicial determination to settle liability for debt.

█ Further, plaintiffs are the innocent and injured parties and have no adequate remedy at law to protect themselves against the continued and repeated assertion that they created a security interest for the benefit of defendant Meeker unless this voidable contract is in equity cancelled and annulled and for naught held by a declaratory judgment of this Court.

Plaintiffs are clearly entitled to such a judgment. The modern doctrine of "business compulsion" is recognized both generally and in the law of Kansas, whose law is applicable to this case. See, e. g., 25 Am.Jur.2d, Duress and Undue Influence § 6 to the following effect:

"There is no doubt that the early common law doctrine of duress is gradually expanded and broken through its original limitations, and it is now recognized that undue influence with the conduct of a business or occupation may constitute duress. Many states have adopted the modern doctrine of

'business compulsion' or what is sometimes referred to as 'economic duress or compulsion.' This doctrine has been regarded by some of the courts as being different from duress, and in the sense that it is a relaxation of the early common law rule this is true. Yet, broadly speaking, 'business compulsion' is a species of duress, not the common law duress to be sure, but duress clothed in modern dress. It seems to be established as a general rule, at least in this country, that the payment of money or the making of a contract may be under such circumstances of business necessity or compulsion as will render the same involuntary and entitle the party so coerced to recover the money paid, or excuse him from performing the contract, especially where undue advantage or a threat to do an unlawful injury is shown. It has also been held that an action may be brought to recover damages for 'economic coercion.'" pp. 361–62

In respect particularly of Kansas law, see Manhattan Milling Co. v. Manhattan Gas & Electric Co., 115 Kan. 712, 225 P. 86, 34 A.L.R. 176, 179, where it is said:

"We have traveled far from the common-law duress of bodily imprisonment, or fear of loss of life or member, or of imprisonment, to the modern doctrine of involuntary payment. There must be unlawful coercion; but we are no longer restricted to the goose flesh producing agencies, and the mythical man of ordinary courage and firmness is no longer invoked as a standard. It is sufficient that the constraint, in the particular instance, destroy free agency to pay or not to pay according to one's own will, whether relief were formerly obtainable by common-law action for duress, or by suit in equity for wrongful compulsion. Williamson, [H. F. Co.] v. Ackerman, 77 Kan. 502, 94 P. 807, 20 L.R.A.,(N.S.) 484."

The Restatement of the Law of Contracts, which is frequently accepted as a statement of the law in Kansas, in Chapter 16, Volume 2, §§ 492, 493, 494, 495 and 496, deals expressly with duress in the sense of economic coercion or business compulsion. In Section 492 is contained the following definition thereof:

"Duress in the Restatement of this subject means

(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

(b) any wrongful threat of one person by words or other conduct that induces another to enter a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement." [1]

---

1. In § 493 of the Restatement, illustrations under clause (d) of Paragraph 5, read as follows:

"5. A pawnbroker has a pledge of a valuable heirloom belonging to B. B offers to redeem the pledge, but A refuses to surrender it unless B signs a note in satisfaction of another claim the validity of which is in dispute. A may avoid the note."

"8. A, the owner of a livery stable, has in his possession horses of B, who is engaged in a business which requires the constant use of these horses. A refuses to let B take the horses from the stable unless he gives a mortgage for a debt due A for which A has no lien on the horses. Fearing that otherwise his business would be ruined, B gives the mortgage. There is duress though legal remedies are available for the recovery of the horses, and though the debt due A is undisputed."

"12. A threatens B that unless B pays $100 that A claims for an injury caused by B to A's automobile, A will sue B and attach B's stock in hand for $5000. Such an attachment would be ruinous to B's business and induced by fear he makes the payment. Although A has a genuine claim and $100 is not a grossly excessive estimate of A's damages, there is duress because the size of the threatened attachment makes it an abuse of process."

"13. A has a valid cause of action for unliquidated damages against B, and threatens B that unless B contracts

And see also 5 Williston on Contracts §§ 1603–1607 (1937 ed.); 17 C.J.S. Contracts § 177, p. 965; [2] Anno. 79 A.L.R. 655.[3]

Criterion Holding Co., Inc. v. Cerussi, 140 Misc. 855, 250 N.Y.S. 735, is a case almost precisely in point. In that case, a realty company was alleged in a counterclaim to have been employed by Cerussi to procure a loan for a corporation in dire financial straits, and, knowing of the dire financial situation of the corporation, the realty corporation "threatened to use its influence with the title company [from whom the loan was sought] to cause the loan to be refused, unless the defendant corporation would enter into the transaction referred to in the complaint." It was held that the counterclaim thereby stated a claim of "business compulsion."

■■ Defendant relies on a defense of advice of counsel. This defense is without merit. No one can be immunized from the consequences of duress and coercion by the advice of counsel. Coercion and duress which interfere with the rights of others is wrong and actionable whether accompanied by malice or other conduct warranting allowance of punitive damages. "The courts will hold that there is duress vitiating the contract, regardless of the intent with which the pressure was applied." 17 C.J.S. Contracts, § 168, p. 944. In this case the defense of advice of counsel was submitted to the jury on claim for punitive damages. In equity it is clear that the nature of the legal advice and the circumstances under which it was given, received and employed disqualify it from meeting minimal standards. 25 C.J.S. Damages § 123(7), p. 1146.

Defendant repeatedly and persistently insists that in sending the telegram and aggressively pursuing his claim to the $13,750 he was doing only what he had a legal right to do. This contention shows an obstinate refusal to recognize his obligation as a retained consultant to assist in securing a loan and in making a purchase. He had no right to interfere with the making of the loan and sale unless his unilaterally fixed monetary compensation (for servicing a loan and sale) was not paid without opportunity for due process of law. He concededly had no lien under Kansas law, but attempted to secure payment as if he did. This was the act of an unfaithful agent of the Fergusons, and a tortious interference with the performance of a contract with respect to plaintiffs and perhaps others.

It is therefore evident that in equity plaintiffs are entitled to a declaratory

---

to transfer B's motor car to A in satisfaction of the claim, A will attach a shipment of perishable goods belonging to B. Other non-perishable goods of B are available for attachment. An attachment of the perishable goods would be highly injurious to B, and induced by fear of consequences he enters into the contract. It is made under duress." Section 493(d) states that duress may be exercised by "threats of wrongfully destroying, injuring, seizing or withholding land or other things."

2. This section reads in part as follows: "Many authorities recognize the doctrine that economic duress or business compulsion vitiates a contract induced thereby. The doctrine has been characterized as a modern, equitable one. While it stems from the old common-law doctrine of duress, it constitutes an expansion of that doctrine by courts of equity, and it, accordingly, bears only a slight resemblance to that doctrine . . .

"A contract may be invalid or unenforceable by reason of economic duress or business compulsion where undue or unjust advantage has been taken of a person's economic necessity or distress to coerce him into making an agreement. So, where a person is called on either to comply with demands or suffer a serious business loss, this has been regarded by some courts as a species of duress invalidating contracts induced thereby, and such pressure is duress when it involves a breach of duty by an agent."

3. This annotation cites Manhattan Mill. Co. v. Manhattan Gas & E. Co., 115 Kan. 712, 225 P. 86, 34 A.L.R. 176, as adhering to the "modern doctrine of business compulsion."

judgment that the agreement of the closing statement insofar as it provides for the withholding by the bank of the deposit of $13,750 to secure defendant's claim is void and that plaintiffs' rights to the fund are superior to defendant's, and for other declaratory relief.

■ The plaintiffs are entitled to a declaratory judgment that the defendant is obligated to pay to the plaintiffs all costs, attorneys' fees and expenses and actual damages directly resulting from the original telegram of August 5, 1969, and the persistent continuing claims to a "security interest" in the deposit of $13,750, including the expenses and attorneys' fees reasonably expended in securing this declaratory judgment, agreed to be $3,500. The plaintiffs are further entitled to a declaratory judgment that defendant is obligated to pay to plaintiffs the post-trial expenses, costs and attorneys' fees reasonably expended in defending this judgment.

At the conclusion of the evidence a declaratory judgment was orally dictated in the record on the principal issue of voidability of the agreement to deposit $13,750 to secure defendant's claim. This adjudicated the issue of liability for economic duress and coercion and for the admitted reasonable expenses and attorneys' fees in the sum of $3,500. The remaining issues at law were liability for actual damages and for punitive damages.

Since the same conduct of defendant which constitutes "business compulsion" also constitutes tortious interference with the contractual relations of plaintiffs, a verdict for plaintiffs was directed on this claim, assessing actual damages for such interference at $3,500, in accordance with the declaratory judgment and the agreement on reasonableness. The remaining legal issue, namely, of the liability for punitive damages which should be awarded to plaintiffs, was submitted to the jury and by the jury fixed at $1.00.

This adjudication is without prejudice to any claims or defenses, legal rights or obligations of the defendant and Glenn Ferguson and his wife.

For the foregoing reasons, it is

Ordered, adjudged and declared that the closing agreement of plaintiffs, the Fergusons and the Home State Bank to deposit $13,750 to secure defendant's claim which defendant herein relied upon as creating a "security interest" in him was obtained directly as a result of the wrongful business compulsion, economic coercion or duress, as generally defined, and recognized in the law of Kansas and is void. It is further

Ordered, adjudged and declared that the defendant has no rights superior to those of plaintiffs in and to the sum of $13,750 and interest thereon which remains in the deposit in the Home State Bank. It is further

Ordered, adjudged and declared that defendant is under an obligation not to interfere with the payment of this deposit to the plaintiffs and is obligated if necessary or desirable to give a formal release to the bank of any interest he has therein claimed to be superior to those of plaintiffs. It is further

Ordered, adjudged and declared that defendant is under an obligation based on the void agreement to discontinue his suit for damages and other relief against the plaintiffs in the District Court of Wyandotte County, Kansas. It is further

Ordered, adjudged and declared that defendant is obligated to pay to plaintiffs only once all actual damages which directly resulted from the wrongful exercise of business compulsion or economic duress in the sum of $3,500 (now embodied in a judgment at law) and for the attorney fees herein expended by plaintiffs under the provisions of the Federal Declaratory Judgment Act, Section 2201, Title 28, United States Code, and under the rule of National Indemnity Co. v. Harper (W.D.Mo.) 295 F.Supp. 749, 757. It is further

Ordered, adjudged and declared that jurisdiction is retained to grant conventional relief if future circumstances warrant it.