In the Matter of James Randall SMITH and Bonnie J. Smith, Debtors.

James Randall SMITH and Bonnie J. Smith, Plaintiffs,

v.

GUARANTY STATE BANK AND TRUST, Defendant.

Bankruptcy No. 80–03601–SJ.

Adv. No. 81–0194–3.

United States Bankruptcy Court, W. D. Missouri, W. D.

Aug. 31, 1981.

Stephen B. Strayer, Kansas City, Mo., for plaintiffs.

Philip Lorton, Kansas City, Kan., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT FOR PLAINTIFF AND AGAINST DEFENDANT AND ACCORDINGLY PARTIALLY CANCELLING DEFENDANT'S LIEN ON CERTAIN OF PLAINTIFFS' REAL PROPERTY

DENNIS J. STEWART, Bankruptcy Judge.

This is an action brought by the debtors for the purpose of preventing the defendant's foreclosure and sale of their residence.[1] After joinder of the issues by the

---

1. In their "complaint objecting to secured claim" filed in this action on February 2, 1981, the plaintiffs state that "(d)efendant is the holder of a claim against the Debtors purported to be secured by a third lien on the homestead of the debtors"; that "the Debtors have properly exempted their said homestead in these proceedings under the laws of the State of Kan-

pleadings, the plenary evidentiary trial of this action was conducted by the court on July 30, 1981. The plaintiff, James R. Smith appeared personally and by Stephen B. Strayer, Esquire, his counsel, and the defendant appeared by Philip C. Lorton, Esquire, its counsel.

The plenary evidentiary hearing then conducted by the court demonstrated the following material facts to exist: In the year 1979, the plaintiffs became interested in taking over or participating in the business of Crews Chrysler Plymouth, Inc. At that time, that corporation owed an unpaid and overdue indebtedness to the defendant bank of approximately $246,000. The analysis of the plaintiff James R. Smith of the status of the corporation led him to the belief that a further loan of about $50,000 was needed if there was to be any hope for success of the corporation's future operations.

Therefore, the plaintiff James R. Smith and his wife undertook negotiations with the defendant bank to secure the loan which was deemed necessary to the debtor corporation's future operations. These negotiations culminated in the extension of $50,000 of new loan money which was being sought from the defendant bank. In return for the loan, the plaintiff and his wife gave the bank a security interest in their residence [2] in support of their personal guarantee of the corporate indebtedness to the defendant bank.

The question for resolution in this case is whether the guaranty given by the plaintiff and his wife is effective as it purports to make the plaintiff and his wife liable on the debtor corporation's indebtedness which already existed at the time the new loan was extended. The form of the guaranty then executed by plaintiff and his wife (which form was supplied to them for their signatures by the defendant bank) includes language which would make the signatories liable for payment of the current loan and also all pre-existing indebtedness of the debtor corporation.[3] This language was neither prominent on the form, nor was it particularly clear, but it was the testimony of Gordon M. Johnson, the president of the defendant bank, in the hearing of this action, that the plaintiff and his wife were explicitly advised on the date of and before the time of their executing the guaranty that it constituted a guaranty of the pre-existing debt; that the new money would be loaned only on condition that the plaintiff and his wife guaranteed the pre-existing indebtedness as well as that which was now being incurred; and that both plaintiff and his wife agreed to this condition. This testimony is directly controverted by that of the plaintiff James R. Smith, who states that no mention was made of the guaranty of the pre-existing debt and that he and his spouse were even reluctant to offer their residence as security for the new loan.

On this issue, the court has little alternative except to find that no discussion of, or bargaining over, the guaranty of the pre-

sas"; that "the purported lien claimed by Defendant against Debtors' homestead is wholly unsupported by consideration, or, that the consideration therefor has failed and is wholly inadequate; that the claim upon which said lien is purported to be based is usurious, unconscionable, and obtained by fraud and mistake and, therefore, unenforceable." Consequently, the plaintiffs "pray that said security interest claimed by Defendant be decreed void and that the claim of Defendant be determined to be wholly unsecured."

2. Thus, on September 5, 1979, James R. Smith and Bonnie J. Smith, "husband and wife, as joint tenants," issued a mortgage on "Lot 38, Berryhill Farm Estates, Johnson County, Kansas," to the "Guaranty State Bank & Trust, a

Kansas Corporation," reciting that the consideration given was the sum of $75,000.00.

3. The guarantee, which was executed simultaneously with the mortgage on September 5, 1979, see note 2, *supra*, pertinently provided that:

"In order to induce the Guaranty State Bank ... to make such advances, loans or extensions of credit, directly or indirectly to Crews Chrysler Plymouth, Inc., .... the undersigned ... hereby guarantee to Bank ... the prompt and unconditional payment of any and every obligation or liability of Borrower to Bank, its successors, endorsees or assigns ... *whether now existing* or hereafter incurred ...." (Emphasis added.)

existing indebtedness took place prior to the execution of the guaranty. The testimony of the defendant's president to the effect that such discussion and bargaining did take place was twice contradicted by him in his prior statements—once in his testimony in the trial of this action where he stated that he had no memory of the conversation which preceded the signing of the guaranty and once in his response to the plaintiffs' written interrogatories in pretrial discovery in which he stated that he could not repeat the substance of those discussions because he kept no written records of them.[4] Credit must necessarily be given to the testimony of the plaintiff James R. Smith in this regard to the effect that the signing of the guaranty was not preceded by any discussion of or bargaining concerning the plaintiffs' guaranteeing the pre-existing indebtedness.[5]

### Conclusions of Law

■ The abovefound facts of the action at bar demonstrate (1) that the form containing the guaranty was a form used and provided by the defendant bank; (2) that the words therein providing for guarantee of the corporation's pre-existing indebtedness were neither prominently displayed thereon nor crystal clear as to their import nor previously explained by the defendant bank; (3) that the pre-existing debt of $246,000 is more than 4 times the new money loaned ($50,000); and (4) that, if the guarantee were enforced according to its literal terms, it would result in a harsh forfeiture of the plaintiffs' residence. Further, and crucially, the facts demonstrate that the debtor corporation was in a desperate financial plight at the time and that, if the plaintiffs were to secure the loan on behalf of the corporation, they generally had to abide the wishes of the defendant bank, who could accordingly virtually dictate the terms of the guaranty agreement.

Under such circumstances there is ample precedent for nonenforcement of the contract as a "contract of adhesion" or an unconscionable contract. See *U.S.A. Chem, Inc., v. Lewis*, 557 S.W.2d 15, 24 (Mo.App. 1977) ("[A]dhesive clauses are subject to a defense of unconscionableness only when exacted by the overreaching of a contracting party who is in an unfairly superior bargaining position."); *J. J. Newberry Co. v. Mixon*, 440 F.Supp. 20, 21 (E.D.Mo.1977) ("An unconscionable contract is one which no man in his right senses would make on the one hand and which no fair and honest man would accept on the other."). See also *Jump v. Manchester Data Services Corp.*, 424 F.Supp. 442, 444, 445 (E.D.Mo.1976), to the following effect:

> "The general rule is that courts will not declare an agreement to be void simply because it is unwise. 17 Am.Jr.2d Contracts § 192 (1964). If, however, the bargain 'is a bargain "such as no man in his senses, and not under a delusion, would make on the one hand, and as no honest and fair man would accept on the other,"' a court will find the agreement to be unconscionable and refuse to enforce the same. *Wenninger v. Mitchell*, 139 Mo.App. 420, 122 S.W. 1130, 1132 (1909). See also, *Ball v. Reyburn*, 136 Mo.App. 546, 118 S.W. 524 (1909); 14 Williston on Contracts § 1632 (ed. 1972) [tests of unconscionability include the above cited rule and that '... no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice...'] *Cf., Drake v. Greener*, 523 S.W.2d 601 (Mo.App.1975) ['...where a person has been induced to part with a thing of value for little or no consideration, equity will seize upon the slightest circumstances of fraud, duress, or mistake for the purpose of administering justice in the particular case.']."

---

4. See defendant's answer to plaintiffs' interrogatory no. 5 to defendant inquiring into the substance of this conversation. That answer reads only to the following effect: "Don't have a record of all conversations."

5. In this regard, the court has, as it must, given due regard to the appearance and demeanor of the respective witnesses. "The deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses." *In re Windle*, 653 F.2d 328 (8th Cir. 1981).

In this case, it is manifestly and extremely unfair, under the circumstances detailed above, for the plaintiffs to lose their home on account of an indebtedness which they never incurred, bear no legal or moral responsibility for, and when their liability for it was not made clear to them.

■ And even if the facts on the material issue of whether discussion regarding guarantee of pre-existing debt was had must be decided otherwise, this contract would still be unenforceable under the doctrine of "economic duress." for the defendant bank, by threatening not to grant the new money which was essential for the continuation of business operations, would have overborne the will of the plaintiffs to do the only thing they could do to obtain the money necessary to keep the corporation in business—guarantee the great magnitude of pre-existing corporate debt. See *Schoen v. Lange*, 256 S.W.2d 277, 282 (Mo. App.1953), to the following effect:

"[D]uress, . . . as understood in the decisions of this state, comprehends any form of constraint or compulsion which is sufficient to overcome the will of a person of ordinary firmness and to induce him to comply with a demand to which he would not have yielded had he been permitted to act of his own volition . . . In the case of fraud the party defrauded acts because of the false representation made to him, while in the case of duress he acts knowingly but unwillingly because of the compulsion exercised on him."

See also *Wolf v. St. Louis Public Service Co.*, 357 S.W.2d 950, 954 (Mo.App.1962), where it is said that:

"Under the so-called modern equitable rule a contract obtained by so oppressing a person by threats as to deprive him of the free exercise of his will may be avoided on the ground of duress whether or not the oppression causing incompetence to contract amounts to what was formerly deemed duress at law or merely to the

wrongful compulsion remediable in equity."

And further, see *Fizzell v. Meeker*, 339 F.Supp. 624, 627, 628, (W.D.Mo.1970), quoting 25 Am.Jur.2d Duress and Undue Influence, § 6, P. 361, to the following effect:

"There is no doubt that the early common law doctrine of duress has gradually expanded and broken through its original limitations, and it is now recognized that undue influence with the conduct of a business or occupation may constitute duress. Many states have adopted the modern doctrine of 'business compulsion' or what is sometimes referred to as 'economic duress or compulsion.' This doctrine has been regarded by some of the courts as being different from duress, and in the sense that it is a relaxation of the early common law rule this is true. Yet, broadly speaking, 'business compulsion' is a species of duress, not the common law duress to be sure, but duress clothed in modern dress. It seems to be established as a general rule, at least in this country, that the payment of money or the making of a contract may be under such circumstances of business necessity or compulsion as will render the same involuntary and entitle the party so coerced to recover the money paid, or excuse him from performing the contract, especially where undue advantage or a threat to do an unlawful injury is shown. It has also been held that an action may be brought to recover damages for 'economic coercion.'"

In this action, the evidence shows that the loan would not have been made except for the extraction of the unconscionable guarantee. Therefore, the doctrine of "duress", within the meaning of the above cases, applies.[6] But this is warranted, on the facts of this case, only with respect to the pre-existing loan. It is conscionable, otherwise, that the property continue to stand as se-

---

**6.** It is plain on the particular facts of this case that the doctrine of economic or business compulsion has direct applicability when, according to the plaintiff's analysis, the business of the corporation could not continue without the in- fusion of loan money in the sum of $50,000.00, and when the defendant would not grant the loan except under the condition that a preexisting loan in the sum of $246,000 was personally guaranteed by the plaintiffs.

curity for the balance due on the new loan which was originally extended in the sum of $50,000 on September 5, 1979. The plaintiff James Randall Smith admitted in his testimony that he expected and intended to put up his personal resources for the new loan, but not for the pre-existing debt. And the extension of the loan to the corporation is sufficient consideration for the contract of guarantee. Accordingly, it is therefore

ADJUDGED that the defendant's security interest on plaintiffs' real property [7] be, and it is hereby, invalidated as it secures the pre-existing debt of the debtor.

David Stockwell, Liberty, for plaintiff.

P. Anthony White, Kansas City, for defendant.

---

**7.** See the description of this property contained in note 2, *supra.*